Howry, J.,
delivered the opinion of the court:
There is a separate cause of action in each of the nineteen hundred plaintiffs whose names appear in the petition or in the legal representatives of such of them as are dead. The misjoinder of persons whose demands, taken together, make an aggregate of something over two and one-half millions of dollars is apparent from the petition when we consider that the amounts are based on separate demands having no direct relation to the rights of the others; that they are for different sums which originally accrued at different dates and in different post-offices throughout the country, if they accrued at all; that they depend upon an adjustment of the accounts of each office and of each demand taken singly and not as a whole, and that if merit enough be shown to entitle some or all of the parties to relief the judgment of the court must necessarily be several and for the benefit of each individual suitor as to the amount claimed and proved to have been adjusted by such one, because. no one plaintiff has any interest in or right of action to the demand of the other or the right to collect any part of the judgment but the. amount of his own demand if relief be granted. The right of appeal to the Supreme Court of the United States would not exist merely because the parties had put their demands in one petition if judgment be refused because of the want of title in any one claimant in and to the demand of the other petitioners.
Notwithstanding the misjoinder, Ave conclude to proceed with the cases without requiring each plaintiff to file a separate petition because of a substantial objection to the proceeding manifest without reference to the misjoinder.
The demands are for unpaid salaries of former postmasters under the act of March 3, 1883 (22 Stat. L., 486). It is alleged in the petition that each of the persons whose names appear in the petition was duly appointed, qualified, and served as postmaster at the place named in the petition, between July 1, 1864, and July 1, 1814, and that by reason of a deficiency in the salary allowed in the terms of service each of said postmasters became entitled to a readjustment of *314 salary under section 8 of chapter 114 of the laws of 1866; that such readjustment was not made, and thereupon an application was presented to the Postmaster-General, under chapter 119 of the laws of 1883, for the readjustment to which each of the said postmasters had become entitled, and that the readjustment had been made within six years prior to the date of the filing of the petition, but the payment of the salaries due had been prevented by the Postmaster-General because of his refusal to report the readjustments to the Auditor for the Post-Office Department; that the Postmaster-General has also refused to inform the attorney of the claimants as to the date of final action on said claims or whether they have been acted on finally; that in order to keep the claimants in ignorance of the fact that an amount had been found due by the readjustments the Postmaster-General had forbidden the attorneys an examination of the papers and had refused all information as to the amount of readjusted salary in each case thus made in accordance with law, so that the claimants could not present their claims to this court because of which the amount clue each postmaster was approximately stated and that the actual time of readjustment became conjectural. The prayer of the petition is that the Postmaster-General be required to send to this court a copy of each paper in the case of each claimant upon which is recorded the specific performance of the duty of readjustment of salary required by law and that the amount in each case ascertained to be due be adjudged for payment against the United States.
The act of March 3, 1883, supra, authorized and directed the salaries of all postmasters and late postmasters of the third, fourth, and fifth classes under the classification provided for in the act of July 1, 1864, whose salaries had not theretofore been readjusted under the terms of section 8 of the act of June 12, 1866 (14 Stat. L., 59), to be readjusted by the Postmaster-General where sworn returns of receipts and business or quarterly returns in conformity to then existing laws and regulations had been made to the Postmaster-General or to the First or Third Assistant, such returns showing that the salary allowed was 10 per cent less *315 than it would have been upon the basis of commissions under the earlier act of 1854. The readjustments, if made, were to be in accordance with the mode presented in section 8 of the act of 1866, supra. Every readjustment of salary under the act was required to be upon a written application by the postmaster or his legal representative. Under this act readjustment became essential to recovery. (United States v. McLean, 95 U. S., 753; United States v. Ewing, 184 U. S., 110.) The vital thing to be considered on the merits, then, is the matter of the readjustment.
Recurring to the allegations of the petition, we find it to be claimed that the readjustments were made, but not reported, and in consequence of the failure to disclose the readjustments the amount due the postmasters named in the petition is approximate^ stated. Thus plaintiffs allege that the actual time of readjustment is conjectural.
Readjustment being an executive act, the liability of the Government could not arise until that act was duly performed under the terms of the statute authorizing readjustment. Payments could neither be made nor directed to be made until some evidence of final action came into the possession of the Auditor for the Post-Office Department. Furthermore, under the rules and regulations of the Department no readjusted salary of former postmasters could be paid if the chief of the salary and allowance division refused to order payment. In passing upon so many accounts the head of the Department necessarily relied upon subordinates, and the machinery provided for that purpose was necessary because of the complex character of the work by and through subordinates which in'the nature of things was made the basis of the action of the Postmaster-General. As it is alleged in the petition that the amount due each postmaster is unknown and the time of readjustment conjectural, a motion to make the petition more definite and certain might well have been interposed by the defendants, even if a general allegation of an actual, though secret, adjustment by the Postmaster-General be deemed sufficient on demurrer, because it also appears that the proper accounting officer had never received either evidence or report of the adjustment, and thus, whatever *316 action had been taken, the amounts were left indefinite. If the Postmaster-General withheld his approval; if, having ascertained under the applications that plaintiffs were entitled to more salary than they had received, the right yet remained with the Postmaster-General to enter an approval in some form, or to withhold it, not arbitrarily and regardless of the rights of postmasters, but to determine for himself the accuracy of the work done for him by the accounting officers of his Department.
Generally it was required of postmasters to make out a statement at the end of each quarter, under oath, of the total value of postage stamps canceled during the quarter, as salary could not exceed the amount to which the office would be entitled on commissions and box rents. When the salary of a postmaster had become fixed there could be no increase without readjustment.. The quarterly returns operated to make readjustment take effect prospectively, because the revenues of the office had to appear bj^ the sworn statement from the amount received from canceled stamps and from box rents. While this is true, errors in adjustment were subject to correction, and it would be an unjust rule against the Government to say that the Postmaster-General was bound by the sworn statement of a postmaster, and that he was obliged officially to give it credit by making a readjustment based wholly upon an ex parte statement, without opportunity to ascertain the truth.
Errors based upon mistaken statements and frauds predicated upon false statements deterred the authorities in the beginning from increasing some of the salaries growing out of the alleged number of canceled postage stamps and the amount of box rents, and the act authorizing readjustment did not contemplate action in any case where readjustment was dependable upon doubts as to the correctness of the returns when made.
The question is whether the executive act has been performed. The oral testimony undertakes to recite facts from the records. This testimony is not the best evidence; is largely based upon information stated to have been derived from others, and includes inferences and conclusions which *317 the court can not consider. The summary set forth in the exhibits embraces extracts or entries from .public records which does not present the matter in such form as the court can receive as competent, because the entries, if they exist, contain the original evidence. The witness undertaking to make these extracts and entries from the public records is evidently without knowledge of the facts undertaken to be proven. These records are accessible if they exist, and the power of the courts has not been exhausted to obtain them. As petitioners have proceeded to trial we are left to deal with the case as they have made it.
It is said the readjustment is admitted, because the Postmaster-General in his report to Congress dated November 27, 1889, stated that “ the review of salaries of postmasters and'ex-postmasters of the third, fourth and fifth classes under the act of March 8, 1883, * * * has been complete, as the act of Congress approved August 4, 1880, limited the presentation of claims to January 1, 1887, and applications filed to January 1, 1887, have been reviewed.” And again, in the same report, that the Postmaster-General said, “ The review of salaries of postmasters and ex-postmasters of the third, fourth, and fifth classes under the act of March 3, 1883, has been completed.” In considering this phase of the matter Ave are Avitliout the benefit of the researches of counsel. It becomes necessary, hoAvever, to examine the question and to adA^ert to certain principles in relation to the matter of official communications and their effect as evidence in controArersies Avith the Government. The decision as . to the admissibility of these statements and their probative value is not only vital to the parties whose rights Ave are considering, but is of far-reaching consequence beyond the record presented by this complaint.
Official reports and certificates made contemporaneously Avith the facts stated and in the regular course of official duty by an officer having personal knowledge of them are admissible for the purpose of proving such facts, but the design and meaning of this rule is not to convert incompetent and irrelevant evidence into competent and relevant evidence because it is contained .in an official communication: *318 In Corwin v. United States, 129 U. S. R., 381 (citing Clifton v. United States, 4 How., 242; 1 Taylor Ev., §§ 391, 394; 1 Greenl. Ev., §§ 82, 84), it is said that had the officer been testifying under oath an assertion something like that in the case at bar would be inadmissible upon the ground that the statement itself implied the existence of primary and more original and explicit sources of information. The court added that the statement of extraneous or important circumstances, however naturally they may be deemed to have a place in the narrative, is no proof of the circumstances, citing United States v. Buford (3 Pet., 12).
The report of the Postmaster-General contains the statement that he had “ reviewed ” certain salaries under a certain act; that the “ review ” had been completed.
The communication does not say how, when, in what manner, or what the result was. It merely shows an examination, but when does not appear. There is nothing to show such a readjustment as carried the necessary increase of salary to the accounts examined so as to enable the parties to sue upon the adjustment. Accordingly, the petition is dismissed. '