William A. **BERRY**

v.

The **UNITED STATES.**

No. 50–52.

United States Court of Claims.
Nov. 30, 1954.

Charles R. Nesbitt, Oklahoma City, Okl., for plaintiff. Everett E. Cotter, Oklahoma City, Okl., was on the brief.

Frances L. Nunn, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Ernest C. Baynard, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is a claim by an officer of the U. S. Naval Reserve, promoted following his release from a Japanese prisoner-of-war camp, for active duty pay and allowances in the grades to which he was promoted from the dates of rank stated in his commission rather than from the dates on which his appointments were made by the President.

Plaintiff was commissioned an Ensign in the U. S. Naval Reserve on September 2, 1941, and was immediately called to active duty. Thereafter, he was captured by the Japanese upon the surrender of Corregidor on May 6, 1942, and was liberated by American forces at Manila on February 4, 1945.

Pursuant to the provisions of the Act of July 24, 1941, 55 Stat. 603, plaintiff, on February 15, 1945, was promoted to the temporary grade of Lieutenant, Junior Grade, to rank from October 1, 1942, and on October 5, 1945, was promoted to the temporary grade of Lieutenant, to rank from November 1, 1943, and on the same date, to the temporary grade of Lieutenant Commander to rank from October 3, 1945.

By orders dated November 9, 1945, plaintiff was discharged from active service, effective at the end of his terminal leave on December 16, 1945.

Plaintiff was paid as an Ensign at $150 per month for the period October 1, 1942, through September 1, 1944; as an Ensign with over three years of service at $157.50 per month for the period September 2, 1944, through February 14, 1945. Plaintiff was paid as a Lieutenant, Junior Grade, with over three years of service at $175 per month for the period February 15, 1945, through October 2, 1945, and as a Lieutenant Commander with over three years of service at $262.-50 per month for the period October 3, 1945, to December 16, 1945.

During the period from May 11, 1942, to October 9, 1945, plaintiff, as a single officer with no dependents, was credited with a subsistence allowance at the rate of $0.70 per day as authorized for single officers. During the aforesaid period plaintiff received no quarters allowance except for the period April 12 to 13, 1945, during which time he was required to procure quarters at his own expense and he was credited the rental allowance applicable to a single officer of his rank for these two days.

On February 28, 1948, by action of the Board for Correction of Naval Records, plaintiff's records were corrected to show that he was released from active duty on March 16, 1946, instead of December 16, 1945, as stated in his inactive duty orders of November 9, 1945. Subsequently, on March 14, 1951, by petition No. 50069, filed with this court, plaintiff sought recovery of $879, this amount representing 90-day terminal

leave pay, and on November 6, 1951, this court entered judgment in favor of plaintiff for said amount. [120 Ct.Cl. 810]

Defendant, in its argument before the court for the first time, urges that plaintiff's claim is barred by the statute of limitations.[1]

■■ The plaintiff, in oral argument, contends that the statute of limitations was not pleaded and therefore was not timely raised by the defendant. The cases uniformly hold that the defense of the statute of limitations is jurisdictional and ever present in actions against the United States whether pleaded or not. Siskind v. United States, 116 Ct.Cl. 809; Peysert v. United States, 41 Ct.Cl. 311; Myers, Administrator v. United States, 22 Ct.Cl. 80. Thus, defendant is not precluded from raising the issue at this time.

Defendant says plaintiff's right, if any, to receive compensation he claims, is barred by the statute of limitations. That the statute was tolled by the Soldiers' and Sailors' Civil Relief Act of 1940 [2] until plaintiff left military service. That when plaintiff went on terminal leave he was no longer on military service, the statute of limitations began to run from November 9, 1945, and suit was not filed until February 4, 1952, more than six years later.

If, as defendant contends, plaintiff remained in the military service only until November 9, 1945, the Soldiers' and Sailors' Civil Relief Act of 1940, supra, would toll the statute to that date. It would then follow that since his suit was not filed until February 4, 1952, his claim would be barred by the 6-year statute of limitations.

However, "by order dated November 9, 1945, plaintiff was discharged from active service, effective at the end of his terminal leave, December 16, 1945. On February 12, 1948, by action of the Board for Correction of Naval Records, plaintiff's records were corrected to show that he was released from active duty on March 16, 1946, instead of December 16, 1945, as stated in his inactive duty orders of November 9, 1945."

The Court of Appeals in the case of Hironimus v. Durant, 4 Cir., 168 F.2d 288, held that an officer remains on active service until the conclusion of terminal leave. This was a *habeas corpus* action to test the legality of her conviction of larceny by a general court-martial. Plaintiff, a WAC captain, claimed that her active service terminated at the commencement of her terminal leave, and that thereafter (while on terminal leave) she was beyond military jurisdiction. The legality of her conviction depended on whether terminal leave constituted active service. Judge Soper in his opinion said, 168 F.2d at pages 289–290:

"The Judge Advocate General of the Army has consistently held, as the orders given the petitioner on March 9 themselves indicated, that an officer, while on terminal leave, remains on active duty. SPJGA 1945/13,372, 14 December 1945. Such an officer is held subject to all the provisions of the Army regulations in respect to discipline; and accordingly, although such an officer who is not a member of the regular army may become a candidate for public office, nevertheless since he is on active duty it is held that he remains subject in the conduct of his campaign to laws and regulations applicable to officers on active duty. SPJGA 1946/2188, 1 March 1946. In his opinion in this case the Judge Advocate General said: 'Prior to the expiration of his terminal leave, an Army officer remains an officer an active duty. Consequently, during such leave he remains subject to the laws and regulations governing political activity by officers on active duty.'

\*　　\*　　\*　　\*　　\*　　\*

---

1. Act of June 25, 1948, 62 Stat. 976, 28 U.S.C., § 2501 (1952), 28 U.S.C.A. § 2501.

2. 54 Stat. 1181, as amended 56 Stat. 770, 50 U.S.C.Appendix, § 525 (1952), 50 U.S.C.A.Appendix, § 525.

"So also SPJGA 1945/10842, 10 October 1945, where the Judge Advocate General said that 'Although an officer of the Army on terminal leave is normally not called upon to perform duty, he is nevertheless in an active duty status and is not, technically speaking, separated from the service or relieved from active duty, as the case may be, until the expiration of his terminal leave.'"

The Hironimus case, supra, was cited as authority and the rule followed in an opinion by Judge Whitaker in the case of Curzon v. United States, 120 F.Supp. 197, 128 Ct.Cl. 5, wherein it was held that similar leave of a government employee accrued pursuant to the Act of August 1, 1941, 55 Stat. 616, constituted active service in determining the length of service under the Civil Service Retirement Act.[3]

Thus, it is apparent that the 6-year statute of limitation period on plaintiff's claim did not commence until the conclusion of his active service, March 16, 1946. This action, having been filed on February 4, 1952, was less than six years from that date.

The question then presented is whether plaintiff is entitled to the additional pay of the higher ranks from the respective dates of the promotions or from the earlier "dates of rank" stated in these promotion orders.

Plaintiff was promoted pursuant to the provisions of the Act of July 24, 1941, 55 Stat. 603, 34 U.S.C. § 350 et seq., 34 U.S.C.A. § 350 et seq. Sections 1, 3, 5, and 11(a) of the act provide in pertinent part as follows:

"* * * That except as otherwise specified herein the authority granted by this Act shall be exercised only in time of war or national emergency determined by the President.

* * * * * *

"Sec. 3. Officers on the active list of the Regular Navy or Marine Corps in commissioned ranks, including those appointed under the authority of section 2 of this Act, may. be temporarily appointed to higher ranks or grades in the Regular Navy or Marine Corps, and the provisions of paragraph 9 of section 1 of the Act approved June 10, 1922 (42 Stat. 626; U.S.C., title 37, sec. 2), shall be applicable to all officers eligible for consideration for appointment or advancement pursuant to the provisions of this Act, not only during the existence of a state of war formally recognized by Congress, but also during a national emergency determined by the President.

* * * * * *

"Sec. 5. The temporary appointments under the authority of this Act shall be in such numbers as the President may determine that the needs of the service require and in such manner and under such regulations as he may prescribe.

* * * * * *

"Sec. 11. The provisions of this Act, except as may be necessary to adapt the same thereto shall apply to—

"(a) Personnel of the Naval Reserve (except the Fleet Reserve) and the Marine Corps Reserve (except the Fleet Marine Corps Reserve) in like manner and to the same extent and with the same relative conditions in all respects as are provided for personnel of the Regular Navy and Marine Corps, but this shall not be construed to authorize the temporary appointment of the personnel thereof to ranks or grades in the Regular Navy or Marine Corps."

The Act of July 24, 1941, supra, was designed to provide a simple method of making temporary appointments in times of emergency and to replace the more cumbersome peacetime method of ac-

3. 46 Stat. 468, as amended.

complishing the permanent promotion of officers by the selective process.

The statutes which prescribe the peacetime method for making permanent promotions for officers prior to World War II were the Act of June 23, 1938, 52 Stat. 944, for officers of the regular Navy and Marine Corps, and the Naval Reserve Act of 1938, approved June 25, 1938, 52 Stat. 1175, 1183, for officers of the Naval and Marine Corps Reserve. The Act of June 25, 1938, as amended, 54 Stat. 865, upon which plaintiff relies to support his claim, reads as follows:

"In time of war or national emergency, officers of the active list of the Naval Reserve or the Marine Corps Reserve employed on active duty shall be advanced in their respective corps in grade and rank in the same manner as is or may be prescribed for officers of the Regular Navy or the Marine Corps, respectively, in such numbers for each grade or rank, as may be prescribed from time to time by the Secretary of the Navy, and when so advanced they shall take precedence among themselves and with other officers of the Navy and Marine Corps, in accordance with date of such advancement or promotion: *Provided,* That no officer of the Naval Reserve or the Marine Corps Reserve shall be advanced to a higher rank until he has qualified therefor by such mental, moral, professional, and physical examinations as the Secretary of the Navy may prescribe: *Provided further,* That hereafter all officers of the Naval Reserve and the Marine Corps Reserve who may be advanced to a higher grade or rank in time of peace or in time of war or national emergency under the provisions of the Naval Reserve Act of 1938, *shall be allowed the pay and allowances of the higher grade or rank from the dates of rank as stated in their commissions, as distinguished from the dates of commission, or dates of acceptance of commission, and the dates of rank as stated in*

*their commissions shall be conclusive for all purposes.* \* \* \*" 34 U.S.C. 855k (1946 Ed.).

■ There can be no doubt from the reading of the above act that officers promoted under the Naval Reserve Act of 1938, supra, were entitled to pay and allowances from their dates of rank. Smith v. United States, 76 Ct.Cl. 520; Couvrette v. United States, 76 Ct.Cl. 746; Hargrave v. United States, 80 Ct. Cl. 642. In this case, however, plaintiff and defendant have stipulated that the promotions were had under the Act of July 24, 1941, supra. The Act of July 24, 1941, insofar as it relates to pay and allowances, is silent as to the dates of rank as provided for in the Act of June 25, 1938, supra, and it is reasonable to assume that under those circumstances plaintiff would be entitled to "pay and allowances of the higher grade or rank from the dates of rank as stated in their commissions." However, on June 30, 1942, Public Law 639, 77th Congress, 56 Stat. 463, became law. The act was entitled "An Act to provide for the better administration of officer personnel of the Navy and Marine Corps during the existing war, and for other purposes." Section 1 of this act suspended the provisions of existing law insofar as those provisions related to the permanent promotion or advancement of all officers of the Navy and Marine Corps. Thus, the provisions of the Act of June 25, 1938, supra, became inoperative, and plaintiff's promotions could only have been pursuant to the Act of July 24, 1941, supra.

Section 1 referred to above reads in pertinent part as follows:

"\* \* \* the provisions of existing law insofar as they relate to \* \* \* the permanent promotion or advancement of all officers of the Navy and Marine Corps \* \* \* are hereby suspended \* \* \*."

Section 5 of the Act of June 30, 1942, supra, provides that the dates on which personnel *appointed pursuant to the Act of July 24, 1941, supra,* become entitled to the pay and allowances of the grades or ranks to which appointed shall be on

the dates *on which such appointments were made by the President.* Section 5 reads as follows:

"Personnel heretofore and hereafter temporarily appointed pursuant to and as defined in the Act of July 24, 1941 (Public Law 188, Seventy-seventh Congress), *shall be entitled to the pay and allowances of the grade or rank to which so appointed from the dates on which such appointments are made by the President,* and their appointments, unless expressly declined, shall be regarded for all purposes as having been accepted on the date made, without formal acceptance or oath of office." [Italics supplied.]

The legislative history of the Act of June 30, 1942, supra, does not disclose the reasons for not carrying into effect the provisions of the Naval Reserve Act of June 25, 1938, supra, as to "dates of rank." The purpose of section 5 of the act was explained in the report of the House Committee on Naval Affairs, House Report 2238 on H. R. 7160, June 15, 1942, as follows:

"Under existing law personnel temporarily appointed or promoted in grade are not entitled to the pay of the grade to which appointed or promoted prior to the date of execution of an oath of office. In many instances, officers so appointed or promoted have been lost in action, presumably after having executed the oath of office form, and the form has been lost with the ship. Thus the Navy Department is without positive knowledge that these officers were, in fact, serving in the higher grade when lost in action. Therefore their dependents are denied the death benefits which would be based on the higher grade. This section will correct this situation and at the same time remove the necessity for useless paper work and much correspondence.

\* \* \* \* \* \*

"The purpose of this bill is to suspend existing provisions of law relating to the permanent promotion of all officers of the Navy and Marine Corp. \* \* \* In addition the bill amends other features of present laws in order that they may be better and more efficiently administered.

\* \* \* \* \* \*

"In certain cases, where necessary, the precedence of officers under the temporary selection procedure is provided for and clarified. There is a special provision preserving promotion rights where under war conditions the loss of records and unavailability of officers to execute formal papers is probable."

This court has consistently given effect to the plain language of similar provisions of other statutes. Thus plaintiffs were allowed pay and allowances from the "date of rank \* \* \* stated in the commissions" by this court in construing the plain language of the Act of June 10, 1926, 44 Stat. 717. Smith v. United States, supra; Couvrette v. United States, supra.

The fact that we have great sympathy for plaintiff because he languished in a Japanese prison camp, suffered the privations of a prisoner of war and was not given the same privileges as his fellow officers with regard to promotion and pay and allowances, does not give us the right to speculate as to the intent of Congress when the language of the act is clear. Prindle v. United States, 41 Ct. Cl. 8.

 Plaintiff was promoted pursuant to the Act of July 24, 1941, supra. Persons promoted pursuant to said act are entitled to pay and allowances of the higher rank from the date on which the appointments were made by the President. The appointments plaintiff received were made by the President on February 15, 1945, and October 5, 1945. Plaintiff has received the pay and allowances of the respective grades to which he was promoted from the dates the appointments were made by the President.

He is not entitled to more, and the petition is accordingly dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.