Jean T. **EDMONSTON**, Executrix and Beneficiary of the Estate of Lieutenant Commander Lilburn A. Edmonston, USN, Deceased,

v.

The **UNITED STATES**.

No. 411–54.

United States Court of Claims.

Oct. 9, 1957.

P. Bateman Ennis, Washington, D. C., for plaintiff.

Philip W. Lowry, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

PER CURIAM.

This case was referred by the court pursuant to Rule 45(c), 28 U.S.C.A., to W. Ney Evans, a commissioner of the court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed February 1, 1957. Although plaintiff filed an intention to except to the report of the commissioner within 15 days as required by the rules, she failed to file any exceptions or brief within the time required under Rule 46 (a) which time expired on March 18, 1957. On August 29, 1957, defendant filed a motion for judgment in accordance with the recommendations of the commissioner. Since the court agrees with

the recommendations and findings of the commissioner as hereinafter set forth, it hereby adopts the same as the basis of its judgment in this case. Plaintiff's petition will be dismissed.

It is so ordered.

### Opinion of the Commissioner

The claim is for payment of a lump sum bonus as provided by the statute hereinbelow cited, pertinent portions of which follow:[1]

" * * * When officers commissioned pursuant to this Act or the Naval Aviation Reserve Act of 1939 (53 Stat. 819) are released from active duty that has been continuous for one or more years, they shall be paid a lump sum of $500 for each complete year of continuous commissioned active service, or, in the event of the death of such officers, the beneficiaries * * * shall be paid such sum * * *; and in the event of the death of such officers not the result of their own misconduct, or if released from active duty otherwise than upon their own request or as a result of disciplinary action, this lump-sum payment shall be prorated for fractional parts of each year of such service: *Provided,* That the lump sum payments authorized herein * * * shall be in addition to any pay, allowance, compensation, or benefits which they may otherwise be entitled to receive: * * *."

Plaintiff's decedent was commissioned in the Naval Reserve pursuant to the Naval Aviation Reserve Act of 1939. His death was not the result of his own misconduct, and if he was released from active duty, it was not the result of disciplinary action.

■ Plaintiff's contention is that she, as the beneficiary, is entitled to the lump sum payments provided in the act because her decedent (1) was commissioned in the Naval Reserve pursuant to the 1939 act; (2) served on continuous active duty in the Naval Reserve for nearly five years; (3) was "necessarily released from active duty in the Naval Reserve in order to effectuate his being commissioned in the U. S. Navy * * *"; and (4) died while on active duty in the Navy, in an accident and not as the result of his own misconduct.[2]

Defendant's contention is that "although plaintiff's testator was commissioned pursuant to the Naval Aviation Cadet Act and finally became a line officer in the Regular Navy, at no time was he released from active duty in the naval service, whether as an Aviation Cadet, a Naval Aviation Reserve Officer, or as line officer in the Regular Navy."

Defendant further asserts that "it was the intent of Congress in enacting the Naval Aviation Cadet Act to offer the appointee mutually exclusive benefits, i. e., a lump sum award if he returned to civilian life, or, in the alternative, an opening for a life-time career in the Regular Navy." In support of this assertion defendant cites a decision by the Assistant Comptroller General withholding the lump sum payments from another officer on the stated grounds.[3] The decision reviewed at length the legislative history of the Naval Aviation Cadet Act of 1942, 34 U.S.C.A. § 850a et seq. and marshaled from it some cogent evidence in support of the conclusion that the Congressional intent was to provide alternative benefits.

■ Plaintiff urges, and rests her case on the proposition, that her husband was "necessarily released from active duty in the Naval Reserve in order to effectuate his being commissioned in the U. S. Navy." Absent the nuances of

---

1. Excerpted from 34 U.S.C.A. § 850k.

2. The petition in this case was filed on October 15, 1954, just four days short of six years after the officer's death on October 19, 1948. The claim, if any, accrued when plaintiff's decedent was released from active service in the Naval

Reserve, on October 31, 1946. His service in the Regular Navy after that time tolled the statute of limitations, under the Soldiers' and Sailors' Civil Relief Act (the act of October 6, 1942, 56 Stat. 770, as amended 50 U.S.C.A.Appendix, § 525).

3. B–49360, dated August 10, 1945.

Navy parlance, this deduction is logical and sound; and plaintiff can summon the Navy itself to prove it. The official communication of the Navy to the Comptroller General " * * * requesting a decision on certain questions * * * respecting lump-sum payments authorized by * * * the Naval Aviation Cadet Act of * * * 1942 * * * ", stated the problem then at hand as follows:

" * * * The appointment of Ensign * * * Logan * * * USN, as ensign A–V (N) USNR under the Naval Reserve Act of 1939 * * * was terminated on 6 Mar 1941 to permit acceptance on the following day of commission in the Regular Navy * * *. Such termination of appointment automatically released him from active duty, and terminated status as a commissioned officer Class A–V (N) in the Naval Reserve. * * * "

Precisely the same thing occurred in the case of plaintiff's decedent. His commission in the Naval Reserve was terminated on October 31, 1946, to permit him to accept a commission in the Regular Navy the next day. The distinction so cherished by the Navy between its Reserve and its Regular components made it a matter of course to terminate the one before there could be an acceptance of the other.

Plaintiff's decedent, therefore, was out of the Naval Reserve before he accepted a commission in the Regular Navy. His Reserve commission was terminated. He was a free agent for a few hours. During that time interval he was "released from active duty," just as was Ensign Logan in the case presented to the Comptroller General by the Navy.

Defendant's contention that plaintiff's decedent was never released from active duty within the meaning of the statute must nevertheless be sustained. For the purposes of this determination further examination of the legislative history is unnecessary. The language of the stat-

ute, when read in terms of Navy service, is itself a sufficient guide.

During the period of service by plaintiff's decedent in the Naval Reserve, 1942–1946, an officer commissioned in the Reserve undertook, upon accepting his commission, to serve at the will of the President. He could accept, or decline to accept the commission. Once he accepted it, however, he was a commissioned officer, for keeps, unless and until his commission was terminated by higher authority. There was no term for his service, and no termination date. He could not resign, except by permission. Tenure in the Naval Reserve was a one-way street.

Release from active duty; termination of commission; transfer from one component to another: all of these expressions relate to tenure in the service of the Naval Reserve. And therein lies the crux of this case.

After the end of hostilities in 1945, many Naval Reserve officers were "released to inactive duty". They were given their choice of active or inactive status in the Reserves. Several years passed, however, before resignations, terminating status as Reserve Officers, were accepted by the Navy as a matter of course.

The draft of the bill [4] which became the Naval Aviation Cadet Act of 1942 was transmitted to the Speaker of the House of Representatives by the Secretary of the Navy with the advice that its purpose was " * * * to consolidate all provisions of law relating to naval aviation cadets now contained in several laws, into one act, and to make certain needed changes in the present laws relating to naval aviation cadets." One of the needed changes, according to the testimony of the Chief of Naval Personnel before the Naval Affairs Committee of the Senate, was to provide for the enlistment of aviation cadets instead of their appointment. Except for minor amendments, not here material, the bill was en-

4. H.R. 7364, 77th Cong., 2d sess.

acted into law in the form proposed by the Navy.

In those sections of the initial enactment relating to aviation cadets (who were authorized to enlist for four years), distinction is made between discharge, release from active duty, and transfer. In those sections relating to aviation cadets who received their commissions, provision is made for employment on active duty, recall to active duty, and release from active duty. Section 12, authorizing the lump sum payments upon release from active duty, is in consonance with the other sections of the act in this respect.

The conclusion is inescapable, from the text of the statute as a whole and of section 12 in particular, that release from active duty is closely related to and limited by a resulting status of inactivity insofar as concerns service in the Navy or any of its components.

Since plaintiff's decedent transferred from the Reserve to the Regular Navy, his release from active duty in the Naval Reserve did not result in placing him in a status of inactivity. In fact, the purpose and intent of his release was just the contrary: to enable him to continue on active duty, albeit in a different component of the Navy. Therefore, he was not released from active duty within the meaning of section 12 of the Naval Aviation Cadet Act of 1942.

### Findings of Fact

1. Lieutenant Commander Lilburn A. Edmonston, USN, was killed on October 19, 1948, in the crash of a Navy airplane. Plaintiff, his widow, is the executrix of his will and had been named his beneficiary under section 12 of the Naval Aviation Cadet Act of 1942.[5]

2. At the time of his death, Commander Edmonston was on active duty as a commissioned officer in the Regular service of the United States Navy. Theretofore, he had been an aviation cadet, by appointment on May 15, 1941,

and an ensign in the Naval Reserve, commissioned on February 4, 1942. He had remained on active duty in the Naval Reserve from the date of his commission as a Reserve officer until November 1, 1946, when he was commissioned as an ensign in the Regular Navy. Thereafter, his service in the Navy was continuous until his death.

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and her petition is therefore dismissed.

---

5. The Act of August 4, 1942, 56 Stat. 738, as amended by the Act of October 25, 1943, 57 Stat. 574, and the Act of July 25, 1947, 61 Stat. 424.