**Stephen M. BICKFORD**

v.

**The UNITED STATES.**

**No. 372–79C.**

United States Court of Claims.

July 29, 1981.

Nichols, J., filed a concurring opinion.

Joseph C. Barton, San Francisco, Cal., attorney of record, for plaintiff.

Elizabeth Langer, Washington, D. C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, DAVIS, NICHOLS, KASHIWA, KUNZIG, BENNETT and SMITH, Judges, en banc.

## ON THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

In this military pay case the plaintiff, a former captain in the JAG Corps of the Regular Army, challenges the validity of the Excess Leave Program under which he attended law school. Plaintiff argues that the Secretary was without statutory authority to deny him pay and allowances during his three years in law school. The Government has moved for summary judgment dismissing the petition, arguing *inter alia*, that plaintiff's suit is untimely under the statute of limitations. It further contends that in the event the court reaches the merits in this case, the statutory scheme under which the Excess Leave Program was promulgated expressly prohibited the recovery sought by plaintiff. We agree with the Government on the merits.

### I

As part of an effort in the 1960's to attract and retain high-quality legal professionals in the active military service, the Secretary of the Army established the Excess Leave Program.[1] Under that program, a select number of commissioned officers of the Regular Army and distinguished ROTC graduates were permitted to enter excess leave for up to 3½ years for the purpose of obtaining a legal education and admission to the bar. Although the program did not provide for pay and allowances while attending law school, participants received such benefits as retirement, promotion, and longevity credit as well as access to PX, commissary, and health care.[2] In return, participants were required to sign a statement agreeing to accept appointment in the JAG Corps and serve on active duty for a specified number of years after completing law school. The statement also provided that excess leave status would be terminated if a participant failed to maintain acceptable grades or abandoned the study of law. All participants were allowed to make application to and attend the law school of their choice.[3]

### II

Plaintiff applied for admission into the Excess Leave Program. By a letter dated April 9, 1970, plaintiff was notified of his acceptance, and was also notified that participation in the program was to be without pay and allowances. *Thereafter plaintiff signed a statement in which he agreed to abide by all the conditions set forth in his letter of acceptance.*

From September 1970 to May 1973, plaintiff attended the College of William and Mary Law School and satisfied all requirements under the Excess Leave Program. In exchange, plaintiff received all the benefits to which he was entitled. Upon graduating in 1973, plaintiff began fulfilling his duty obligation. He was initially assigned, effective August 10, 1973, to Army Headquarters in the Presidio of San Francisco, California. Plaintiff remained in San Francisco for approximately three years until July 13, 1976, when he was transferred to the 8th Infantry Division in Germany.

---

1. Army Regulation 601–114, effective September 26, 1969.

2. *Hearings on H.R. 7179 Before the House Committee on Appropriations*, 88th Cong., 1st Sess. 21 (1963) (statement of General Vittrup).

3. Additionally, participants were employed during the summer months in the Judge Advocate General's offices and received full pay and allowance for such work.

On November 22, 1976, more than six years after his acceptance into the Excess Leave Program and more than three years after graduating from law school, plaintiff first indicated his objection to the program by filing an administrative request for back pay for the time spent in law school. This request was filed with the 8th Infantry Division finance officer in Germany. On February 23, 1979, the Army Finance and Accounting Center denied plaintiff's application. On August 16, 1979, more than nine years after his claim first accrued, plaintiff filed suit in this court requesting back pay and allowances for the three-year period he spent in law school.[4] On January 23, 1980, plaintiff was honorably discharged from military service.

## III

In *Sherengos v. United States*, 214 Ct.Cl. 749, 750 (1977), we held without discussion that the Soldiers' and Sailors' Civil Relief Act of 1940[5] (SSCRA) "mandates the exclusion from all limitations periods of any period of active military service." The government argues that that ruling was erroneous and urges us to overrule it. After full consideration of the issue, we conclude that the SSCRA tolls the running of the statute of limitations during the period of active military duty.[6] We therefore reaffirm *Sherengos*.

Under this court's statute of limitations, 28 U.S.C. § 2501 (1976), a claim filed outside of six years from the date on which the action accrues is barred.[7] *Brownfield v. United States*, 218 Ct.Cl. 477, 589 F.2d 1035 (1978). It is the Government's position that under the six-year statute of limitations, this court lacks jurisdiction to entertain plaintiff's claim for back pay since plaintiff filed suit in this court more than nine years

after his claim first accrued. The Government argues that § 525 of the SSCRA does not toll the limitations period in this case since application of that provision requires a demonstration that military service has handicapped the serviceman's ability to bring suit. Plaintiff counters by arguing that § 525 does not require satisfaction of any such condition precedent and that therefore, the statute of limitations was tolled during the period he served on active duty. We agree with the plaintiff.

Section 525 of the SSCRA states in part: The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in *any court * * * by or against any person in military service * * ** whether such cause of action or the right of privilege to institute such action or proceeding shall have accrued prior to or during the period of such service. . . . [Emphasis Added].

The express terms of the SSCRA make certain that the tolling of the statute of limitations is unconditional. The only critical factor is military service; once that circumstance is shown, the period of limitation is automatically tolled for the duration of service. *Ricard v. Birch*, 529 F.2d 214 (4th Cir. 1975). We do not accept the Government's argument that the court should ignore the express language of § 525.

There is not ambiguity in the language of § 525 and no justification for the court to depart from the plain meaning of its words. The statute draws no distinction between the many different categories of active duty personnel. When Congress intended to impose conditions on the applica-

---

4. See n.3 *supra* at 2.

5. 54 Stat. 1178, as amended, 50 U.S.C.App. § 525 (1976).

6. *See Deering v. United States*, 223 Ct.Cl. ——, 620 F.2d 242 (1980), where Kunzig, J., writing for the court *en banc*, addressed a similar issue with respect to laches and explicitly reserved for another day, the question now before us.

7. *§ 2501 Time for filing suit.*
Every claim in which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.
28 U.S.C. § 2501 (1976).

bility of other provisions in the SSCRA, as in §§ 510, 517, 521–524, and 530, it did so in clear terms. Section 525, in marked contrast, in no way suggests that a serviceman must demonstrate that his military service has affected his ability to bring suit as a condition precedent to its applicability. The existence of explicit conditions throughout the SSCRA, and the absence of conditional language in § 525, manifest the limited meaning of that section.

■ The Government argues that the statute does not mean what it says because the legislative history evinces Congress' intent to limit the applicability of § 525 to those servicemen engaged in battle or who are otherwise handicapped from asserting their legal claims. In construing the SSCRA, the Government relies most heavily on various statements taken from congressional debates at the time § 525 was originally enacted as § 205 of P.L. 103, 40 Stat. 440 (1918). The Government focuses its argument on such phrases as "soldiers taken for foreign service," "scattered along our vast coast line," "in the hostile waters," and "outside of the usual routes of communication." 55 Cong.Rec. 7805 (1917).

The Government reads too much into these scattered bits of legislative history. In the first place, these statements must be viewed in the context in which they were made. The period was 1917–1918, a time when our nation was embroiled in world war. Although Congress was indeed preoccupied with thoughts of our soldiers going off to war, Congress was concerned generally with enacting a civil relief bill for *all servicemen*, the purpose of which was, among others, to grant a sort of moratorium or stay of all legal proceedings that could be entered against a soldier in the courts. *Soldiers' and Sailors' Civil Relief Bill: Hearings on S.2859 and H.R.6361. Before the Subcommittee by the Committee or the Judiciary. United States Senate*, 65th Cong., 1st & 2d Sess. 5 (1917–1918). The above-quoted language appears to be of a descriptive nature rather than a broad declaration of congressional intent. Con-

gress was merely using these phrases to describe the operation of the statute under then existing war time conditions.

■ Moreover, more than sixty years have lapsed since Congress first enacted § 525. If there was discontent with the post-war application of § 525, Congress could have either repealed or amended it. Despite a major revision of the SSCRA in 1942, Congress left § 525 untouched and subsequently, has never sought to insert any type of limiting language conditioning its application.

Finally, if we are wrong, and Congress did not intend § 525 to cover all active duty military personnel, Congress is always free to amend and revise the SSCRA. Given this nation's constitutional allocation of law making power to Congress and not to the judiciary, it would be much more appropriate to respect the plain meaning of § 525, and to leave it to Congress to make any changes it thinks necessary. Our holding today allows the court to respect the most fundamental of all canons of statutory construction: that statutes mean what they plainly say. As Chief Justice Marshall stated more than a century and a half ago:

> The intention of the legislature is to be collected from the words they employ. Where there is *no ambiguity in the words there is no room for construction*. The case must be a strong one indeed, which would justify a court in departing from the *plain meaning* of words . . . in search of an intention which the words themselves did not suggest. [Emphasis added.]

*United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95–96 (1820).

■ In sum, nothing suggests that Congress either expressly provided or intended for § 525 to apply more narrowly than its literal language. There is no question that the instant plaintiff served in the "military service", as that term is defined in the SSCRA [8] from April 26, 1970, the date he was ordered to report to the Officer Stu-

---

**8.** 50 U.S.C.App. § 511 (1976).

dent Detachment Headquarters in Fort Meade, Maryland, to August 23, 1979, the date on which plaintiff filed suit in this court. As to that period of time, the limitations period was tolled and plaintiff's action was timely filed.[9]

## IV

Having decided that this court does have jurisdiction to entertain plaintiff's claim, our next function is to determine whether plaintiff is entitled to back pay and allowances for the period in which he participated in the Excess Leave Program. In analyzing the parties' contentions, it is necessary first to examine the statutory scheme underlying the Excess Leave Program: (1) the basic pay statute; (2) the excess leave exception; and (3) the appropriations prohibition.

(1) There is no question that a serviceman's entitlement to basic pay is dependent upon statutory right. Section 204 of title 37, United States Code, is the basic military pay statute which entitles an active duty soldier to basic pay at the appropriate grade.[10]

(2) Provided in the same title is § 502(b), an exception to the basic pay statute. The exception is explicit in its terms: there is no entitlement to pay or allowances for authorized absences longer than a serviceman's accrued leave.[11] In other words, no pay during the period of excess leave.

(3) Beginning with the Department of Defense Appropriations Act of 1954, Congress included a prohibition against the use of appropriated funds for legal training of Department of Defense (DoD) personnel.[12] This same prohibition was contained in each DoD appropriations act during the ensuing twenty years, including the period of plaintiff's participation in the Excess Leave Program. The prohibition read as follows:

> None of the funds provided in this Act shall be available for training in any legal profession nor for the payment of tuition for training in such profession. *Provided* that this limitation not apply to off-duty training of military personnel. . . .

The language is clear on its face: the use of appropriated funds for full-time legal training, including the total expense, both of tuition and of the compensation of the individual being trained, was prohibited. *Senate Committee on Appropriations, Senate Report No. 1582,* 83rd Cong., 2nd Sess. 12 (1954).[13]

We have now set forth the three-part statutory scheme under which the Secretary

---

**9.** Numerous courts have decided the very issue we have before us. The following cases have held, as we do today, that § 525 of the SSCRA does not require a serviceman to show that his ability to bring or defend against suit has been handicapped by his military service. *Ricard v. Birch,* 529 F.2d 214 (4th Cir. 1975); *Van Heest v. Veech,* 58 N.J.Super. 427, 156 A.2d 301 (1959); *Newman v. Newman,* 234 Ga. 297, 216 S.E.2d 79 (1975); *Syzemore .v. Sacramento County,* 55 Cal.App.3d 517, 127 Cal.Rptr. 741 (1976). As to those cases holding the contrary, we conclude that they were wrongly decided. *Cf. Pannell v. Continental Can Co.,* 554 F.2d 216, 224–25 (5th Cir. 1977) (holding § 525 inapplicable to a career serviceman in an adverse possession action).

**10.** 37 U.S.C. § 204 [*Entitlement*] (1976), provides as follows:

(a) [T]he following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service. . . .

   (1) a member of a uniformed service who is on active duty. . . .

**11.** 37 U.S.C. § 502(b) (1976) provides as follows:

[a] member who is authorized by the Secretary concerned, or his designated representative, to be absent for a period that is longer than [the member's accrued leave] is not entitled to pay or allowances during the part of his absence. . . .

**12.** P.L. 83–179, 67 Stat. 336 (1953).

**13.** In contrast, however, the proviso permitting the spending of appropriated funds for off-duty legal training was added to insure that DoD personnel taking courses in the evening, or otherwise on their own time, were to receive partial financial assistance. The proviso clearly evinces congressional intent that servicemen attending law school on a full-time basis would neither be entitled to tuition nor compensation during that period. *See* DoD Appropriations Act of 1955, Pub.L. No. 83–458, §§ 722, 724, 68 Stat. 355 (1954).

promulgated the Excess Leave Program. Plaintiff, at this late date, now demands that he receive back pay for the three years he attended law school. He essentially argues that the Excess Leave Program is in violation of the basic military pay statute, 37 U.S.C. § 204, and is without any statutory basis. The Government denies the lack of any such authority, and insists that the establishment of the Excess Leave Program was the culmination of the Secretary's carefully designed efforts to operate within the above-outlined statutory scheme. We agree with the Government.

■ We begin by recognizing that this court shows great deference to the interpretation given a statutory scheme by the officers or agency charged with its administration. *Port Authority of Saint Paul v. United States*, 193 Ct.Cl. 108, 120, 432 F.2d 455, 461 (1970). To sustain the Secretary's application of this statutory scheme, we need not find that his interpretation is the only reasonable one, or even that it is the result we would have reached had the matter arisen in the first instance before the court. *Unemployment Comm'n. v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946).

■ Moreover, it is a well established doctrine that Congress can authorize a deviation from pre-existing law by a provision in an appropriations act. *United States v. Dickerson*, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940); *Director, Office of Workers v. Eastern Coal Corp.*, 561 F.2d 632 (6th Cir. 1977); *City of Los Angeles v. Adams*, 556 F.2d 40 (D.C.Cir.1977); *Friends of Earth v. Armstrong*, 485 F.2d 1 (10th Cir. 1973). *Accord, Lovett v. United States*, 104 Ct.Cl. 557, 66 F.Supp. 142 (1945), *aff'd on other grounds, United States v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed.2d 1252 (1946). However, when Congress modifies a statute by an appropriations limitation, the agency administering the statute is required to effectuate the original statutory scheme as much as possible, within the limits, of course, of the added constraint. *City of Los Angeles v. Adams*, 556 F.2d at 50.

■ In the instant case, the Excess Leave Program was established to effectuate, to the extent possible, the original statutory scheme within the confines of the added limitation imposed by the appropriations provision. Operating within the framework of the congressionally imposed prohibition against compensation for military personnel pursuing full-time legal studies, the Secretary allowed selected individuals to seek a legal career by being placed in excess leave status. To have allowed these individuals to obtain their legal education at the expense of the United States, as plaintiff demands, would clearly violate the statutory scheme as envisioned by Congress.

■ Moreover, even assuming *arguendo* that there was no statutory prohibition on the use of appropriated funds for full-time legal studies, plaintiff fares no better. We think that the excess leave exception, 37 U.S.C. § 502(b), was indeed a sufficient basis under which the Secretary promulgated the Excess Leave Program. Plaintiff has produced nothing to overcome the presumptive validity of the implementing regulation, AR 601–114. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).[14]

All other arguments raised by the parties, though not directly addressed in this opinion, have been examined and given due consideration by the court.[15]

Accordingly, after consideration of the record and the submissions of the parties,

14. Although not binding on this court, the Comptroller General also has held that the Excess Leave Program is authorized under the excess leave exception, 37 U.S.C. § 502(b). 40 Comp.Gen. 505 (1961). *See Lindsey v. United States*, 214 Ct.Cl. 574, 579 (1977).

15. On June 9, 1980, plaintiff filed a motion for leave to file an amended petition to convert this case into a class action suit. Given our disposition as above, we think it would be a waste of judicial resources to allow a class action in the litigation at bar. *See Clincher v. United States*, 205 Ct.Cl. 8, 499 F.2d 1250 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975).

with oral argument of counsel, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Plaintiff's petition is dismissed.

NICHOLS, Judge, concurring:

I fully agree with the court that the instant claim is without merit, if we have jurisdiction to address it. I also agree that we do have such jurisdiction, but my grounds for so stating differ slightly from those of the court.

Plaintiff was on active military service until 1980, and according to the terms of 50 U.S.C.App. § 525, he had 6 years after his separation date to sue on any claim against the United States that accrued during his military service. *Edmonston v. United States*, 140 Ct.Cl. 199, 155 F.Supp. 553 (1957); *Berry v. United States*, 130 Ct.Cl. 33, 126 F.Supp. 190 (1954), *cert. denied*, 349 U.S. 938, 75 S.Ct. 783, 99 L.Ed. 1266 (1955). Defendant in the *Berry* case conceded that limitations were tolled while plaintiff was in military service and only disputed when that service ended. Thus there can be no doubt that under our precedents the present suit is timely as to the entire claim.

If, however, we were writing on a blank slate, my reasonings might be slightly different, and in any event, we are hearing this case *en banc* for the purpose, among others, of overruling our precedents if we determine them to be plainly wrong. The doctrine of strict construction of the consent to be sued was not, it would appear, as highly regarded by the Supreme Court when those cases were decided as it is today; then as often, this court had to be hit in the head by a two by four if it were to take notice of the doctrine, and its doing so *sua sponte* was not to be expected. This strict construction doctrine is, I think, the only principled ground available for challenging the jurisdiction of this court to consider the claim in its entirety.

The result of a strict construction analysis can, however, be succinctly stated. Our statute of limitations, 28 U.S.C. § 2501, is jurisdictional and is a most important qualification on the consent to be sued. Great

numbers of claims are dismissed every year for not meeting it. It would appear that, for consistency, a repeal of such a constraint, like an extension of the consent itself, which it virtually is, cannot be implied but must be expressly stated. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). If § 525 is read according to its text, the intent to override § 2501 is expressly stated, for it says the period of military service "shall not be included in computing any period now or hereafter to be limited by any law, * * * for the bringing of any action or proceeding in any *court*, * * * or *other* agency of *government* by * * * any person in military service * * *." [Emphasis supplied.] "Government" not only primarily designates the Federal Government, but in a suitable context can be read as excluding state governments. *State Bank of Albany v. United States*, 209 Ct.Cl. 13, 530 F.2d 1379 (1976). Federal courts are swept in as agencies of government. This is, arguably, however, one of the very common categories of statutes phrased in an oversweeping manner and leaving it up to the courts to refuse to apply it literally when to do so would lead to absurd results not within the intention of Congress. *E. g., Church of the Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 344 (1892). I believe some of the conflicting cases referred to by the court can best be explained as applications, conscious or otherwise, of the *Holy Trinity* rule of construction. That rule cannot be ignored in cases requiring strict construction analysis. At any rate, I think we can console ourselves and defendant with the reasoning that the express partial repeal of § 2501 by § 525, by strict construction analysis stops short of any instance where such repeal leads to absurd results not shown by the legislative history to have been desired by the Congress. We need not bind ourselves for the future to prefer § 525 over § 2501 whatever the consequences may be. This is the result of strict construction analysis and I think the only result, academic here.

Turning to the case before us, whether or not the result was intended by Congress, I am unable to see any absurdity in opening up plaintiff's claim for consideration on the merits, inasmuch as it calls for no factual inquiry, where evidence might become stale, but is a challenge to the basic legality of a Department of Defense program, which the court encounters not the least difficulty in adjudicating. The need of a 6-year statute of limitations is not so plain in this case that the abrogation of it is absurd. In view of our decision, *Deering v. United States*, 223 Ct.Cl. ——, 620 F.2d 242 (1980) to allow the defense of laches in military pay cases, even against persons protected by § 525 while on active duty, it appears unlikely to me that there will be many, if any, instances where such abrogation is absurd, respecting claims accrued to military persons in course of and incident to their service. The duty of erecting safeguards against such absurd consequences we very likely have already performed.

As I view it, the abrogation effected by § 525 is not limited to servicemen whose station and duties are of a nature to interfere with their protecting their rights, and this is not an absurd result, whether or not we would so frame the law ourselves. Yet it is alternatively proposed to apply § 525 by tolling only the 3 years spent by plaintiff in service in Germany, I should comment briefly. I think it carries the judicial recasting of statutes far beyond the limits blocked out in *Holy Trinity* and produces an absurd result rather than preventing one. There is no showing that, practically, an active duty officer is any more in need of a § 525 tolling in Germany than he is with troops at home, considering the conditions under which United States forces there live and operate, as they are commonly and well known to us. We have held that being in prison does not interfere *per se* with prosecution of a claim in this court. *O'Callahan v. United States*, 196 Ct.Cl. 556, 451 F.2d 1390 (1971); *Grisham v. United States*, 183 Ct.Cl. 657, 392 F.2d 980 (1968). Why being in Germany is so much more of an impediment to protection of one's right than being in prison is not susceptible of reasoned explanation.

In my view of the case, I do not need to reach the question whether the claim is a continuing one and I do not do so.