**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Alice ANDERSON, Claimant–Appellant,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Defendant–Appellee.**

No. 91–1198.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1992.

Decided June 22, 1993.

Jon S. Hutcheson, Smith, Hutcheson & Dunbar, Waynesville, MO, argued (Tyce Stuart Smith, Sr., Smith, Hutcheson & Dunbar, on the brief), for claimant-appellant.

Susan Andrea Manardo, Dalkon Shield Claimants Trust, Richmond, VA, argued (Linda J. Thomason, Dalkon Shield Claimants Trust, on the brief), for defendant-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

**OPINION**

WIDENER, Circuit Judge:

This appeal arising out of the bankruptcy of A.H. Robins, Inc., requires us to determine whether the Soldiers' and Sailors' Civil Relief Act of 1940, as extended, 50

U.S.C.App. §§ 501–591 (the Act), operates to toll the period set by the district court within which all claims against the A.H. Robins estate were to have been filed where the claimant was on active duty with the United States Army during that period. The district court held that the Act does not apply to toll the running of such bar dates in Chapter 11 reorganizations. Being of opinion that the plain language of that statute requires that time periods such as that fixed by the bar date in this case be tolled in favor of military personnel, we vacate the order of the district court and remand for further proceedings.

## I

The facts relevant to this appeal are few and were stipulated by the parties before the bankruptcy court. Major Alice Anderson, a nurse, has been on continuous active duty with the United States Army since November of 1978. On January 8, 1972, a Dalkon Shield IUD was placed in her uterus. The IUD remained in Major Anderson's body until May 25, 1979, when it was removed in the hospital clinic at Womack Army Hospital at Fort Bragg, North Carolina. On May 29, 1979, Major Anderson underwent, among other procedures, a total abdominal hysterectomy and was diagnosed as having several medical conditions that may be related to her use of the Dalkon Shield.

From June 1983 through September 1989 Major Anderson was stationed in Hawaii. In October 1989 her mother, having read a newspaper article about the Dalkon Shield claims procedure, informed her about the possibility of making such a claim. It took Major Anderson two months to assemble her medical records, and she filed her claim in January of 1990. She had no actual knowledge of the Dalkon Shield claims procedure or the possibility of making such a claim prior to her conversation with her mother.

The full history of the litigation arising out of the A.H. Robins bankruptcy need not be recounted here. We note only that as part of the Chapter 11 reorganization plan, the district court on November 21, 1985 entered an order establishing April 30, 1986 as the deadline, which has come to be known as the bar date, for filing claims against the A.H. Robins estate. See Bankr.R. 3003(c). The reorganization plan, including the bar date and a massive notification campaign designed to inform potential claimants of their rights under the plan, ultimately was confirmed by the district court, and this court affirmed that confirmation. *In re A.H. Robins, Inc.,* 88 B.R. 742 (E.D.Va.), aff'd, 880 F.2d 694 (4th Cir.1989), cert. denied, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); see also *Vancouver Women's Health Collective Society v. A.H. Robins Co.,* 820 F.2d 1359 (4th Cir.1987).

Though Major Anderson's injuries first manifested themselves in May of 1979, she did not file a claim with the Dalkon Shield Claimants Trust (the Trust) until January 17, 1990. She accompanied her claim with a motion seeking leave to file it as a timely claim on the grounds that, by virtue of her status as an active-duty military officer throughout the 1980s, section 525 of the Act [1] operated to toll the running of the bar date as to her. Both the bankruptcy court and the district court denied the motion and directed that her claim be allowed only as a late-filed claim. This appeal followed.

## II

The provision of the Act at issue here provides as follows:

> The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service....

---

1. The tolling provision of the Act was actually section 205 of the original Soldiers' and Sailors' Civil Relief Act of 1940, Pub.L. No. 861, 54 Stat. 1181 (1940), and thus sometimes is referred to as section 205 of the Act. For clarity we refer to the section as codified, at 50 U.S.C.App. § 525.

50 U.S.C.App. § 525. The statute essentially tolls periods of limitation both in favor of and against "person[s] in military service" to the extent that their "period of military service"[2] coincides with the limitations period. See *Ricard v. Birch,* 529 F.2d 214, 216 (4th Cir. 1975); *Bickford v. United States,* 228 Ct.Cl. 321, 656 F.2d 636, 639 (1981); *Mason v. Texaco, Inc.,* 862 F.2d 242, 245 (10th Cir. 1988); *Detroit Harbor Terminals v. Kuschinski,* 181 F.2d 541, 542–43 (6th Cir.1950). Major Anderson's argument is straightforward and based almost entirely on the plain language of section 525: her "period of military service," which extends from November, 1978 to the time she filed her claim with the Trust, may not be included in computing against her the period of time established by the order of the district court, from November 21, 1985 to April 30, 1986, within which claims were to have been filed.

■ At the outset, we think it clear that the statute on its face applies to toll the claim filing period in favor of Major Anderson. The statute contains no exceptions and is drafted in extraordinarily broad terms, using the word "any" in four different, and crucial, places. The broad, unqualified, and mandatory language of section 525 leaves little room for judicial interpretation or oversight in its application; indeed, we have held quite plainly that "[t]he tolling statute [section 525] is unconditional. The only critical factor is military service; once that circumstance is shown, the period of limitations is automatically tolled for the duration of the service...." *Ricard,* 529 F.2d at 217; see also *Bickford,* 656 F.2d at 639 ("There is not ambiguity in the language of § 525 and no justification for the court to depart from the plain meaning of its words.").

2. The term "military service" is defined by the Act as including only periods of active duty, preinduction training, or absence from duty "on account of sickness, wounds, leave, or other lawful cause." 50 U.S.C.App. § 511(1). Major Anderson has been on active duty at all times relevant to this litigation.

3. Section 201 of the Act codified at 50 U.S.C.App. § 521, affords military personnel involved in a court proceeding, whether as plaintiff or defendant, the opportunity to obtain a stay of the proceeding. When a serviceman moves the court for such a stay its issuance is mandatory

The case law reveals that litigants from time to time have urged courts to engraft upon section 525 further requirements so as to dilute the unequivocal words and largely uncompromising effect of the statute. The proffered limitations on the statute fall into two categories. First, a few courts have held that the protections of section 525 do not apply to "career" military personnel. See, e.g., *Pannell v. Continental Can Co., Inc.,* 554 F.2d 216, 224–25 (5th Cir.1977); *King v. Zagorski,* 207 So.2d 61, 64–67 (Fla.App.1968); *Bailey v. Barranca,* 83 N.M. 90, 488 P.2d 725, 728–30 (1971). Second, some courts have found in section 525 a requirement that the serviceman seeking protection of the tolling mechanism make a showing that the circumstances of his military service actually impaired his ability to pursue his legal rights in a timely fashion. See, e.g., *Pannell,* 554 F.2d at 224–25; *Crouch v. United Technologies Corp.,* 533 So.2d 220, 222–23 (Ala.1988).

However, the majority of courts that have considered the tolling provision of the Act wisely have declined to initiate such requirements in the face of an unambiguous statute. As for the notion that section 525 does not apply to career servicemen, we think it sufficient simply to note the complete absence of any suggestion in the language of section 525 that Congress intended such a broad and potentially inequitable exception. See *e.g. Mason,* 862 F.2d at 245; *Bickford,* 656 F.2d at 639. As for the requirement of a showing that the period of military service actually affected the serviceman's exercise of his rights, the Supreme Court has rejected that very argument. *Conroy v. Aniskoff,* (—— U.S. ——, ——–——, 113 S.Ct. 1562, 1564–67, 123 L.Ed.2d 229 1993); accord *Ricard,* 529 F.2d at 216–17.[3]

"unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." Thus, Congress knew how to impose a "material affect" requirement when it so intended. In *Ricard* we compared the presence of that requirement in section 521 with the absence of any such language in the tolling provision of section 525. We concluded that tolling was available under the Act by reason of the military service alone, without regard to any showing of actual impact on

However, the Trust in the instant case does not principally rely on these more familiar arguments to avoid the application of section 525 to Major Anderson's claim. Instead, the Trust essentially argues that the tolling provision does not apply at all to limitations periods set as part of a reorganization under Chapter 11 of the Bankruptcy Code. Their argument takes two different forms. First, the Trust takes the position that the May 30, 1986 deadline for filing claims is not a "period ... limited by any law, regulation, or order" within the meaning of the Act. Rather, according to the Trust, the bar date is "a date certain by which creditors with unscheduled or disputed, contingent, or unliquidated claims must file a proof of claim to be eligible for a distribution from the debtor's estate." Brief of Trust at 9.

■ We find the Trust's attempted distinction between a "period" of time and a "date certain" to be without substance. In our opinion the bar date in this case represents the end point of a *period of time*, beginning the day the order establishing the bar date was entered, November 21, 1985, within which Dalkon Shield-related claims were to have been filed. This period operates in precisely the same way as any other limitations period. All such periods are bounded by terminal dates, a fact that does not transform every period into a "date certain" to which the tolling provision of the Act would not apply. Thus we decide that the filing period fixed by the bar date is a "period ... limited by any law, regulation, or order" for purposes of section 525.

The Trust's second argument focuses on the unusual nature of the A.H. Robins bankruptcy in general and the Dalkon Shield Claimants Trust in particular. This argument formed the basis for the district court's decision not to apply the tolling provision of the Act to Major Anderson's claim. As part of the process of confirming the Chapter 11 reorganization plan in this case, the district court conducted a hearing for the purpose of arriving at an accurate estimate of the aggregate value of the Dalkon Shield-related claims against Robins. See *In re A.H. Rob-*

*ins Co.*, 88 B.R. at 746–47. After extensive discovery and a hearing, the court found that "the sum of $2.475 billion, payable over a reasonable period of time, [would be] sufficient to pay in full all Dalkon Shield personal injury claims as well as expenses of the Trusts established to administer the claims." 88 B.R. at 747.

Whether the court's estimate of total Dalkon Shield-related liability proves to be accurate of course is of considerable importance to the ultimate success or failure of the Trust. The accuracy of the estimate obviously depends in some degree on the stability and finality of the total number of timely claimants as established by the response to the 1986 bar date. In the instant case, the Trust understandably is concerned about the possible effect of the addition of an undetermined number of new claims that must be treated as timely by virtue of section 525 on the Trust's long-term solvency. Although Major Anderson may be the first claimant formally to seek the protection of the Act, it would seem likely that she is not the only potential claimant who failed to file before the bar date yet was on active duty with the armed forces during the filing period. Thus, the application of the tolling provision of the Act undoubtedly will have the effect of impairing to a certain extent the Trust's interests in finality and certainty.

We are not unmindful of the Trust's concerns in this regard or of its desire to see a successful completion of its mission to ensure just payment of valid Dalkon Shield-related claims. We remain unconvinced, however, that the circumstances of this case justify reading a facially-applicable statute, section 525 of the Act, out of existence so far as such bankruptcy cases are concerned. As we have already emphasized, section 525 itself contains no hint of an exception for bankruptcy or any other type of proceeding. Where Congress saw fit to exclude a particular type of proceeding from the tolling provision it did so explicitly and unambiguously, as it did in 50 U.S.C.App. § 527, which provides that "[s]ection 205 of this Act [section 525 of this Appendix] shall not apply with

the serviceman's actions. *Ricard*, 529 F.2d at 217.

respect to any period of limitation prescribed by or under the internal revenue laws of the United States." The presence of this exclusion and the absence of any mention of bankruptcy proceedings bolsters our opinion that section 525 applies to the filing period in the instant case.

More importantly, the operation of any tolling provision, including that of the Act, necessarily impairs the parties' interests in finality, certainty, and repose in any case, bankruptcy or otherwise. The language of section 525 simply reflects Congress' judgment that the costs of such a tolling mechanism are outweighed by its benefits, which inure both to military personnel and to those with rights of action against military personnel. See *Ricard,* 529 F.2d at 216–17. Where, as here, Congress has balanced those interests and costs and embodied the result in an unambiguous statute, it is not for a court to depart from its words, whatever the equities of a particular case may be. *Bickford,* 656 F.2d at 639; *Mason,* 862 F.2d at 245. In sum, Major Anderson's claim must be treated as one timely filed.

For the foregoing reasons, the order appealed from is vacated and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

### *VACATED AND REMANDED.*