862 F.2d 242
 Prod.Liab.Rep.(CCH)P 11,981
Diana L. MASON, Individually and as Administrator of the
Estate of Otis W. Mason, Deceased, Plaintiff-Appellee,
v.
TEXACO INC., Defendant-Appellant,
v.
ASHLAND CHEMICAL COMPANY, Defendant-Appellee.
 No. 84-2220.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 28, 1988.
 
 Gerald L. Michaud (Richard D. Cordry and Dwight A. Corrin of Corrin & Krysl, with him on the briefs) of Michaud, Cordry, Michaud, Hutton & Hutton, Wichita, Kan., for plaintiff-appellee.
 Ken M. Peterson (Robert W. Coykendall, with him on the briefs) of Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, Kan., for defendant-appellant.
 Wesley A. Weathers of Weathers & Riley, Topeka, Kan., for defendant-appellee.
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 This products liability case involves claims of personal injury and wrongful death under Kansas law. Jurisdiction was based upon diversity of citizenship. 28 U.S.C. Sec. 1332. Following a fourteen-week trial, the jury returned a verdict against defendant Texaco Inc. (Texaco) and in favor of Diana L. Mason, individually and as administrator of the estate of Otis Mason (Mason), for damages arising from the death of Otis Mason. The jury found that Otis Mason developed leukemia and died after being exposed to benzene produced by Texaco. Texaco moved for a judgment notwithstanding the verdict or for a new trial. Texaco's motion was denied, and Texaco appeals, asserting numerous errors including: the incorrect application of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. Sec. 525 (1982); failure to submit to the jury the comparative fault of defendant Ashland Chemical Company as a phantom defendant after Ashland Chemical Company was dismissed by directed verdict; and erroneous jury instructions. We agree the district court's jury instructions were in error. Accordingly, we REVERSE and REMAND for a new trial.
 
 
 2
 In 1977, Otis Mason was serving in the United States Coast Guard as an instructor at the Coast Guard Engineering School at Yorktown, Virginia, when doctors diagnosed his condition as acute myelocytic leukemia. Otis Mason filed this lawsuit on August 14, 1978, alleging that his leukemia was caused by exposure to benzene, a solvent used in the classroom in a motor oil test kit. He died from leukemia on December 10, 1979. Thereafter, his widow, Diana L. Mason, was substituted as plaintiff in the personal-injury action for the pain and suffering, and wrongful death of Otis Mason. Mason alleged that the manufacturers and distributors of the benzene to which Otis Mason was exposed were liable for his injuries and death primarily because of their failure to warn adequately of the hazards of benzene inhalation.
 
 
 3
 Originally, Mason named as defendant Gerin Corporation (Gerin), the manufacturer of the kit which Otis Mason used to test properties of motor oil. Later, the complaint was amended to state claims against Gerin's supplier, Dooner & Smith Chemical Company (Dooner & Smith); and Dooner & Smith's suppliers, Mellen Chemical, Inc. (Mellen), Ashland Chemical Company (Ashland), and Texaco. By the time of trial, Texaco and Ashland remained as defendants in the lawsuit. At the conclusion of plaintiff's case, the court granted defendant Ashland's motion for directed verdict. The case was submitted against Texaco, although other parties, except Ashland, were listed on the verdict form for comparative-fault assessments. The jury found that the total damages were $9 million and that Texaco was 35% at fault. Judgment against Texaco was entered for $3.150 million.
 
 
 4
 I. SOLDIERS' AND SAILORS' CIVIL RELIEF ACT OF 1940
 
 
 5
 Texaco asserts two reasons the lower court erred in holding that the claims were not time-barred by the Kansas statute of limitations. First, the court misapplied the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. Secs. 501-591 (1982), to exclude from the Kansas limitation period the time during which Otis Mason was placed on the "temporary disability retired list." Second, the court misapplied the Act to Otis Mason, a career military employee without any showing of disability to bring legal suit.
 
 
 6
 The tolling provision of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. Sec. 525, provides in part as follows:
 
 
 7
 The period of military service shall not be included in computing any period now or hereafter to be limited by any law, ... for the bringing of any action or proceeding in any court, ... by or against any person in military service or by or against his heirs, executors, administrators, or assigns.
 
 
 8
 The Act bars any period of military service from being included in computing a statute of limitations for or against a person in the military service.
 
 
 9
 The Act defines "person in the military service" to include those in the Coast Guard. "Military service" means "active duty" under the Act, and "active duty" includes "the period during which a person in military service is absent from duty on account of sickness, wounds, leave or other lawful cause." 50 U.S.C.App. Sec. 511(1) (1982).
 
 
 10
 It is undisputed that in September 1977, Otis Mason was diagnosed as having acute myelocytic leukemia. On March 15, 1978, he was placed on the "temporary disability retired list." On November 5, 1979, Otis Mason was permanently retired, and on December 10, 1979, he died as a result of leukemia. The question presented is whether placement on the "temporary disability retired list" is a "discharge from active service" or merely an "absen[ce] from duty on account of sickness," as anticipated by Sec. 511(1). Under the former, a statute of limitations is not tolled; under the latter, the statute of limitations is tolled. We hold that placement on the "temporary disability retired list" constitutes "absen[ce] from duty on account of sickness" under the Act, and therefore the period of limitations provided by the Kansas two-year statute of limitations, Kan.Stat.Ann. Sec. 60-513(a) (1983), was tolled from March 15, 1978, until November 5, 1979. See Cruz v. General Motors Corp., 308 F.Supp. 1052 (S.D.N.Y.1970).
 
 
 11
 Texaco further argues that the lower court erred in applying the Soldiers' and Sailors' Civil Relief Act of 1940 to Otis Mason, a career military employee. Citing Pannell v. Continental Can Co., 554 F.2d 216 (5th Cir.1977), Texaco urges this court to adopt a broad rule that the tolling provision of 50 U.S.C.App. Sec. 525 of the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply to a career serviceman who has not shown that military service handicapped him from asserting a claim. Although the court in Pannell sought to interpret Sec. 525, the court's conclusion is predicated upon a combined reading of Secs. 521 and 525. Section 521 provides for stay of proceedings and requires the serviceman to demonstrate that his status creates an inability to fully assert or defend a claim. Section 525 contains no such condition precedent. Even so, the court in Pannell imposed upon Sec. 525 the requirement of Sec. 521 and concluded that the tolling provision of the Soldiers' and Sailors' Civil Relief Act of 1940 was inapplicable to a career serviceman who has not shown that he was handicapped by his military service from asserting any claim he had prior to the expiration of the prescribed period. Pannell, 554 F.2d at 225. We cannot accept this interpretation of 50 U.S.C.App. Sec. 525 of the Soldiers' and Sailors' Civil Relief Act of 1940.
 
 
 12
 In our view, the language of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. Sec. 525, is clear and unambiguous. We find no reason to ignore the plain meaning of the statute, and we are persuaded that the correct course to follow is set forth in Ricard v. Birch, 529 F.2d 214 (4th Cir.1975); and Bickford v. United States, 228 Ct.Cl. 321, 656 F.2d 636 (1981). The career status of Otis Mason does not negate the application of Sec. 525. The only condition to Sec. 525 is military service. That condition was met during Mason's placement on the "temporary disability retired list," and therefore the period of limitations was tolled from March 15, 1978, until November 5, 1979. Mason's naming of Texaco as a party on July 14, 1980, was within the period of limitations.
 
 II. COMPARATIVE FAULT
 
 13
 Texaco next contends that the court erred in not submitting to the jury Ashland's possible comparative fault. The court refused to include Ashland as a phantom defendant on the verdict form for determination of comparative fault because Ashland had been granted a directed verdict at the close of the plaintiff's case. Under Kansas law, all types of fault, regardless of degree, are to be compared in order to apportion the causal responsibility for the damages. Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 454 (10th Cir.1982).
 
 
 14
 We have stated previously in Hardin that a scintilla of evidence is not sufficient to justify submitting a nonparty to the jury as a phantom defendant, and that the judge should apply the directed verdict standard when deciding which nonparties to submit as phantoms on the verdict form. Id. at 459 n. 7. Although the standard for granting a directed verdict has varied somewhat over time, compare Cockrell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir.1986), with Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1389 (10th Cir.1981), cert. denied 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982), we find no error in the legal standard applied by the trial judge. We do not review the correctness of the judge's factual findings as they apply to the issue of naming phantom parties on the verdict form because retrial of this case may present new factual issues on the propriety of including the phantom parties.
 
 
 15
 We do note, however, that the propriety of the directed verdict granted to Ashland at the close of the plaintiff's case is not before this court. Mason has not raised that issue on appeal. Texaco had no standing to challenge the ruling below, see e.g., Price v. Greenway, 167 F.2d 196, 200 (3d Cir.1948); Hayes v. Tootle-Lacy Nat'l Bank, 72 F.2d 429, 431-32 (10th Cir.1934), and now cannot resurrect the issue in this court.
 
 III. JURY INSTRUCTIONS
 
 16
 Texaco asserts that in instructing the jury the trial court deviated from Kansas law on several issues relating to Texaco's duty to warn of product hazards. Specifically, Texaco argues the court erred in instructing the jury contrary to law on the bulk seller's duty to warn (No. 6), the duty to train salesmen (No. 13), and also by invading the province of the jury to determine the content and form of the warning required in this case (Nos. 16, 6, and 23).
 
 
 17
 In reviewing Texaco's challenge to the jury instructions, we consider the instructions as a whole to determine whether they "state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." Ramsey v. Culpepper, 738 F.2d 1092, 1098 (10th Cir.1984). In a diversity case, we apply the substantive law of the forum. Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir.1984). " 'The appellate standard of review to be applied by the court is clear: an error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole.' " Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 n. 19 (10th Cir.1988), citing Durflinger v. Artiles, 727 F.2d 888, 895 (10th Cir.1984).
 
 A. Duties Owed by a Bulk Supplier
 
 18
 The leading case in Kansas on the liability of a bulk supplier is Jones v. Hittle Service Inc., 219 Kan. 627, 549 P.2d 1383 (1976). In Jones, the Kansas Supreme Court held that the manufacturer and bulk seller of liquefied petroleum gas "fulfills his duty to the ultimate consumer when he ascertains that the distributor to whom he sells is adequately trained, is familiar with the properties of the gas and safe methods of handling it, and is capable of passing on his knowledge to his customers." Id. 549 P.2d at 1394.
 
 
 19
 Essentially, the holding imposes upon the bulk seller the obligation to sell only to knowledgeable and responsible distributors. Jones does not impose a duty on the bulk seller to warn the ultimate consumer, and specifically does not impose a duty on the bulk seller to police the adequacy of warnings given by the distributor. "If the product is sold in bulk, adequate warning to the vendee is all that can reasonably be required." Id. at 1393.
 
 
 20
 Texaco asserts that Jury Instruction No. 6, the court's "stairstep guide," imposes a duty upon Texaco which exceeds the obligations settled under Kansas law. The third step in the instruction in part advises the jury as follows:Such third issue would cause you to decide whether any or all actions taken by Texaco were sufficient and adequate to reasonably inform and warn its immediate purchaser of such dangerous carcinogenic propensity of benzene, and safety precautions to avoid exposure, and to take reasonable measures to determine that such purchaser was capable of warning others in the chain of distribution to ultimate consumers. Should you find that Texaco fulfilled and discharged its legal duty to warn and take reasonable steps to see that its distributor knew and complied with its duty to inform, then you would return a verdict for defendant Texaco.
 
 
 21
 (Emphasis added.) Instruction No. 6 advises the jury that Texaco had a legal duty to police the actions of the distributor. The language "knew and complied with" exceeds the obligation to sell to a knowledgeable vendee who was capable of passing on the warnings.
 
 
 22
 Although Mason argues that at trial Texaco failed to object to the language "knew and complied with," the record demonstrates that counsel for Texaco objected to Instruction No. 6, that he detailed his objections paragraph by paragraph, and that he specifically objected to the clause "and take reasonable steps to see that its distributor knew and complied with its duty to inform." Texaco more than adequately preserved its objection to Instruction No. 6.
 
 
 23
 The trial court's Instruction No. 6 pertaining to the bulk seller's duty to warn was contrary to Kansas law as set forth not only in Jones, but also in Hendrix v. Phillips Petroleum Co., 203 Kan. 140, 453 P.2d 486, 496 (1969). See generally, Mays v. Ciba-Geigy Corp., 233 Kan. 38, 661 P.2d 348 (1983); Younger v. Dow Corning Corp., 202 Kan. 674, 451 P.2d 177 (1969). In our view the trial court erroneously instructed the jury as to the applicable law.
 
 B. Duty to Train Salesmen
 
 24
 Texaco next argues the trial judge erroneously instructed the jury that as part of the duty to warn, Texaco had a duty to train its salesmen. Instruction No. 13 provides:
 
 
 25
 The defendant Texaco had a duty to adequately instruct and train their salesmen as to their product, benzene, in order that their salesmen take appropriate action and give appropriate advice to the purchasers and users of benzene. The violation of such a duty is negligence.
 
 
 26
 The defendant had a duty to exercise a high degree of care in selecting, training and advising its salesmen.
 
 
 27
 We agree with Texaco that in so instructing the jury, the trial court erred. The instruction does not state Kansas law properly, and it dictates the method of conveying a warning in order for it to be found adequate by the jury.
 
 
 28
 Under Kansas law, a manufacturer has a duty to instruct a distributor or ascertain that he has been instructed in the use and handling of its commodities. Hendrix, 453 P.2d 486. While the central issue before the Kansas Supreme Court in Hendrix was the relationship of parties and the respective liabilities, the court also addressed the duty of the bulk seller to warn the distributor of the hazards of using its product. Plaintiffs brought suit against a distributor of liquefied petroleum gas as a result of an explosion in a private residence. The trial court entered judgment in favor of plaintiffs as against the distributor (Fortner), and in favor of the seller (Phillips) as against plaintiffs.
 
 
 29
 In Hendrix, plaintiffs claimed the trial court erred in failing to rule as a matter of law under the evidence that the manufacturer, Phillips, was negligent in its failure to adequately train the distributor, Fortner. The Kansas Supreme Court characterized the question as one of fact to be determined by the jury under proper instructions, and upheld the following instruction:
 
 
 30
 You are instructed that defendant Phillips had a duty to instruct Fortner [distributor] or ascertain that he had been instructed as to the proceedings to be followed in the event of a leak in an L.P. gas system or explosion.
 
 
 31
 In this connection it is not required that Fortner be educated or instructed as an expert in the field. Phillips has the duty to instruct or ascertain that Fortner has been instructed to the extent that he have such knowledge as is reasonable under the circumstances to give him information sufficient to take appropriate action and give appropriate advice to his customer. The violation of such duty is negligence.
 
 
 32
 Phillips, once having fulfilled the above duty, cannot be held liable for Fortner's failure to take advantage of, use or impart to others such instruction.
 
 
 33
 Id. 453 P.2d at 496. In approving the instruction, the Kansas Supreme Court stated: "A manufacturer of L.P. gas is under a duty to instruct a distributor or to ascertain that he has been instructed in the use and handling of its commodities." Id. 453 P.2d at 496. Counsel for Mason proposed Instruction No. 13 in the instant case, and argued that it was based upon Hendrix. Texaco argued vociferously against giving Instruction No. 13 for the reason that it mandated a particular mode of communication (i.e., instructing and training its salesmen) rather than advising the jury on the Hendrix standard and seeking their determination on the issue of adequacy of warning. Texaco argues that this confusion of method with content of warning grossly misled the jury. We agree. In our view, Instruction No. 13 misinterpreted and improperly expanded the duty imposed upon Texaco under Hendrix.
 
 
 34
 In the trial judge's Opinion and Order denying post-trial motions, he justified the giving of Instruction No. 13 under the Hendrix case and also the case of Sterling Drug, Inc. v. Yarrow, 408 F.2d 978 (8th Cir.1969). In our view, reliance upon Sterling was misplaced as well. In Sterling, plaintiff sought damages from a drug manufacturer as a result of the manufacturer's alleged failure to warn plaintiff's doctor of the side effects of the drug prescribed. The case was tried to the court, and judgment was entered for the plaintiff. The manufacturer appealed. The Court of Appeals for the Eighth Circuit held that the trial judge's finding that the manufacturer's detail men presented the most effective method of warning plaintiff's doctor was not clearly erroneous.
 
 
 35
 The Sterling holding arises from a trial to the bench where the judge functioned as the fact-finder. The duty which the Sterling trial court imposed in finding the facts was a "duty to make reasonable efforts to warn the medical profession of the side effects of the drug." Id. at 991. The Sterling trial court found as fact that failure of the manufacturer to instruct its detail force to warn the physicians constituted failure to make reasonable efforts to warn the prescribing physicians. The circuit court upheld the law applied by the trial court and declined to declare the findings thereunder to be clearly erroneous.
 
 
 36
 The findings of fact in Sterling, however, do not justify the instruction by the court below that Texaco had a legal duty to train salesmen. By so instructing the jury, the trial judge found facts, rather than instructing the jury on the legal duty and asking them to answer the question of adequacy of warnings given, if any. This confusion of function and misstatement of law constituted prejudicial error.
 
 C. Invading the Province of the Jury
 
 37
 Texaco next argues that the trial court's references to benzene as carcinogenic throughout the instructions "amounted to a virtual instruction that Texaco's warning of injury to blood-forming organs was inadequate." On this issue, Texaco submits three sources of error: Instructions Nos. 6 and 23, and the verdict form. Instruction No. 6, the "stairstep guide," reads in part as follows:
 
 
 38
 On the other hand, in the first step, if you find both that benzene was the cause of Mason's leukemia, and that it was Texaco's benzene, you would proceed to answer the next issue, which is the state of the scientific knowledge to a reasonable degree of probable certainty in the time period of Mason's exposure to benzene. If you cannot find by a preponderance of the evidence that such scientific knowledge existed concerning a dangerous propensity of benzene to cause carcinogenic (cancerous) blood disease at the time of Mason's exposure, then your deliberations would cease and your verdict should be for the defendant. If you find that such scientific knowledge did exist to the extent that Texaco either knew it, or should reasonably have known about it, prior to and during Mason's exposure, then you would proceed to decide the next or third issue.
 
 
 39
 Such third issue would cause you to decide whether any or all actions taken by Texaco were sufficient and adequate to reasonably inform and warn its immediate purchaser of such dangerous carcinogenic propensity of benzene, and safety precautions to avoid exposure, and to take reasonable measures to determine that such purchaser was capable of warning others in the chain of distribution to ultimate consumers. Should you find that Texaco fulfilled and discharged its legal duty to warn and take reasonable steps to see that its distributor knew and complied with its duty to inform, then you would return a verdict for defendant Texaco. On the other hand, should you find by a preponderance of the evidence that the warnings were inadequate, defendant Texaco would be negligent, and you would then consider whether such negligence directly caused, wholly or in part, Mason's leukemia.
 
 
 40
 (Emphasis added.)
 
 
 41
 Instruction No. 23, the trial court's comment on the evidence, structured the dispute as to when benzene became recognized as a cause of cancerous blood diseases. The instruction reads in part:
 
 
 42
 A further comment of the Court may be helpful in your decision on the existence of the state of scientific knowledge and defendant Texaco's duty to warn. Actually, on the basis of the evidence of scientific knowledge, two factors or elements of knowledge have been shown to exist. First, there is the dispute over whether and when benzene became recognized as a leukemia source, i.e., a cause of cancerous blood diseases; and secondly, at what level of exposure does the danger exist.
 
 
 43
 (Emphasis added.)
 
 The verdict form reads in part as follows:
 
 44
 4. Do you find by a preponderance of the evidence that the actions taken by Texaco were insufficient and inadequate to warn Texaco's immediate purchaser of the dangerous carcinogenic propensity of benzene?
 
 Yes X No
 
 45
 * * *
 
 
 46
 * * *
 
 
 47
 5. Do you find by a preponderance of the evidence that Texaco did not take reasonable measures to determine that its immediate purchaser, Mellen, was capable of conveying adequate warning to others in the chain of distribution of benzene?
 
 Yes X No
 
 48
 (Emphasis added.)
 
 
 49
 Texaco argues that these instructions and the verdict form shifted the focus away from the true liability question of whether Texaco adequately warned of the dangerous propensities of benzene. According to Texaco, the trial judge instructed the jury to consider whether Texaco had issued a warning of the possible cancerous nature of benzene. Texaco argues this instruction directed the jury to conclude, contrary to evidence, that Texaco's warning of injury to blood-forming organs was inadequate. Stated differently, Texaco argues that the trial court instructed the jury that any warning not containing the word "cancer" was inadequate as a matter of law.
 
 
 50
 Although Texaco's argument is alluring academically, a common-sense approach to the record reveals no error. The trial court's structure of the case in Instruction No. 6, the "stairstep guide," set out as a threshold issue the question of whether the stated level of scientific knowledge existed concerning a dangerous propensity of benzene to cause cancerous blood disease at the time of Otis Mason's exposure. If the jury believed that plaintiff's evidence failed on that issue, they were instructed to cease deliberation and render a verdict for the defendant Texaco. Consequently, in any deliberation on issues past the threshold issue, the jury could rely on its finding that the stated level of scientific knowledge existed regarding the carcinogenic properties of benzene at the time of Otis Mason's exposure. On this issue we perceive no error.
 
 IV. OTHER ISSUES
 
 51
 Texaco raised additional issues which this court does not address in detail due to the necessity of a new trial. Three issues pertain to the applicability rather than content of jury instructions: No. 19, governmental standards; No. 32 "love of live" presumption; and No. 14, duty to test. Texaco also raised the scope of permitted expert testimony; the duty to warn of hazards already known to the employer; nondisclosure of the fact that Gerin was a named defendant; and excessive damages. In our view, each of these issues is fact-bound, and extensive discussion of these issues by us would be unproductive. As to the final issue, Instruction No. 23, the trial judge's comments on the evidence, the law is well settled. In light of the unfortunate necessity of a new trial, we do not decide these additional issues.
 
 V. CONCLUSION
 
 52
 We conclude the jury was misled as to a bulk seller's duty to warn and duty to train salesmen. The jury could not have had a clear understanding that Texaco was only required to warn the purchaser Mellen of benzene's dangerous characteristics and ascertain that Mellen was informed and capable of passing on the warning. The instruction requiring Texaco to train salesmen has no basis in Kansas law. We conclude, therefore, that the jury instructions constituted reversible error.
 
 
 53
 The judgment against Texaco is REVERSED, and the case is REMANDED for a new trial.