2 F.3d 398
 John W. WYATT, Robert P. Nixon, Eugene W. McNeely, Robert B.
Hutchins, Robert G. Benedikt, Robert V. Messina, Corwin H.
Morton, Wesley E. Green, Donald T. Campbell, Robert F.
Stinehour, Edwin B. Attaway, Robert J. Cargill, George F.
Gall, Russell D. Torwelle, Harry G. Stordahl, Larry
Brumfield, Carlyle Burton and Gregory Caleb Bell, III, for
themselves and all other similarly situated, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-1002.
 United States Court of Appeals,
Federal Circuit.
 Aug. 18, 1993.
 
 Ray P. McClain, Charleston, SC, argued for plaintiffs-appellants. Scott J. Tepper, Garfield, Tepper & Epstein, of Los Angeles, CA, was on the brief, for plaintiffs-appellants.
 John S. Groat, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David Epstein, and James M. Kinsella, Attys. Also on the brief was LCDR Mark D. Lawton, JAGC, USN, Dept. of Navy, of counsel.
 Before ARCHER, MICHEL, and RADER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 John W. Wyatt et al. (Appellants) appeal from the order of the United States District Court for the Northern District of California, No. C 79 1492 SAW (filed Sep. 11, 1992), granting the United States's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. We affirm.
 
 DISCUSSION
 
 2
 A. Appellants are representative of a large number of enlisted and former members of the military services.[1] Appellants agreed either to reenlist or to undertake new duties at times when the skills they were to perform were designated by the Secretaries of the military services as qualifying them for proficiency pay pursuant to 37 U.S.C. Sec. 307(a)(2).[2] Either before or after Appellants began their new duties, the respective Secretaries abolished proficiency pay status for such skills and declined to pay them proficiency pay for the remainder of their enlistment periods. Appellants brought this action in the district court under the Little Tucker Act, 28 U.S.C. Sec. 1346(a)(2), seeking to recover proficiency pay for the periods they performed work that previously would have qualified them for such pay.[3] The district court granted the United States's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and this appeal followed.
 
 
 3
 B. Dismissal under Rule 12(b)(6) for failure to state a claim is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We review de novo the district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted. Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed.Cir.1993).
 
 
 4
 This case involves claims to military pay. "[C]ommon-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right." Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). Appellants' entitlement to pay in this case therefore turns upon a construction of 37 U.S.C. Sec. 307; a matter of law on which this Court exercises its judgment independent of the district court's decision. Madison Galleries, Ltd. v. United States, 870 F.2d 627, 629 (Fed.Cir.1989).
 
 
 5
 Statutory construction begins with an analysis of the language of the statute itself. Id. As the Supreme Court has held, "If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S.Ct. 681, 685-86, 88 L.Ed.2d 691 (1986) (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). "Unless exceptional circumstances dictate otherwise, 'when we find the terms of a statute unambiguous, judicial inquiry is complete.' " Burlington N. R.R. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (alteration and citation omitted); In re United States, 877 F.2d 1568, 1572 (Fed.Cir.1989).
 
 
 6
 The proficiency pay statute, 37 U.S.C. Sec. 307, expressly gives the Secretaries of the military services authority to reduce or abolish proficiency pay for any skill. Section 307(c) provides that the Secretary "may, when he considers it necessary, increase, decrease, or abolish proficiency pay for any skill." Nothing in this language precludes the Secretaries from abolishing proficiency pay at any time. By its express terms, therefore, section 307 gives the Secretaries wide discretion to determine the timing and amount of proficiency pay that will be paid to service members for work in critical skill areas. Thus, the statute does not preclude changing or eliminating the payment of proficiency pay during the term of enlistment of a service member.
 
 
 7
 The statute's history does not reveal a Congressional intent contrary to the plain language of the statute. Appellants point to nothing in the legislative history that clearly indicates an intended limit on a Secretary's discretion to abolish proficiency pay. Rather, the legislative history cited by Appellants tends to confirm that Congress wanted the Secretaries to have flexibility in decreasing or abolishing proficiency pay for a satisfied or obsolete skill so that money and personnel could be directed to a different area.[4]
 
 
 8
 Appellants' principal argument is that the Supreme Court's decision in Larionoff v. United States, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), should control the outcome in this case. In Larionoff, the Court concluded, based on a clear expression of Congressional intent, that soldiers' rights to special Variable Re-enlistment Bonuses (VRB) under 37 U.S.C. Sec. 308(g) vested at the point they signed their reenlistment agreements. We do not agree, however, that the holding in Larionoff requires a similar determination that a right to proficiency pay vests at the time of reenlistment or other change of status.
 
 
 9
 Larionoff involved a different statutory provision, 37 U.S.C. Sec. 308(g), that lacked the express grant of discretion contained in 37 U.S.C. Sec. 307(c). The VRB legislation was enacted after proficiency pay was authorized, and the Supreme Court recognized that the VRB was designed to fill a need for a reenlistment incentive that was not filled by proficiency pay. Larionoff, 431 U.S. at 874, 97 S.Ct. at 2156. The Court quoted from the legislative history which indicated that the VRB was expected to be a very specific sort of incentive at just the time that it would be most effective--when an individual decides whether or not to reenlist--and noted that in contrast to proficiency pay, the VRB linked monetary awards to reenlistment, the time when the greatest return per dollar spent in retaining personnel could be obtained. Id. The Court went on to hold that soldiers became entitled to the bonuses provided by the VRB provisions at the time they decided to reenlist because that result was mandated by clear statements of Congressional intent. Id. at 877, 97 S.Ct. at 2158; see also id. at 875 n. 17, 97 S.Ct. at 2157 n. 17 ("The argument that the VRB would be particularly effective as an inducement to re-enlist because it would be provided at the 'decision point' is a constant theme through the hearings, the committee reports, and the floor debates.") The Court concluded that Larionoff and members of his class were entitled "to payment of VRB's determined according to the award levels in effect at the time they agreed to extend their enlistments." Id. at 877, 97 S.Ct. at 2158.
 
 
 10
 In reaching its decision on the VRBs, however, the Court's opinion makes clear that the longstanding principle that Congress may prospectively reduce military pay was unaffected.
 
 
 11
 No one disputes that Congress may prospectively reduce the pay of members of the Armed Forces, even if that reduction deprived members of benefits they had expected to be able to earn. Cf. Bell v. United States, 366 U.S. 393 [81 S.Ct. 1230, 6 L.Ed.2d 365] (1961); United States v. Dickerson, 310 U.S. 554 [60 S.Ct. 1034, 84 L.Ed. 1356] (1940).
 
 
 12
 Larionoff, 431 U.S. at 879, 97 S.Ct. at 2159. We are convinced that proficiency pay is covered by that principle and not by the holding in Larionoff as to the VRB. In contrast to the VRB provision, the statute in this case grants the Secretaries broad discretion to decrease or abolish proficiency pay at any time, and the legislative history contains no indication that Congress intended that entitlement to proficiency pay would become vested at the time of reenlistment.
 
 
 13
 We therefore hold that under 37 U.S.C. Sec. 307 the Secretaries of the military services had the power to abolish proficiency pay with respect to Appellants' skills even though they may have entered into reenlistment agreements or agreed to undertake new duties with an erroneous impression as to the continuation of proficiency pay. Because Appellants had no statutory right to continued proficiency pay, the district court's order of dismissal for failure to state a claim is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Although Appellants have sought class certification, it has not been granted
 
 
 [2]
 37 U.S.C. Sec. 307 provided in pertinent part:
 Special pay: proficiency pay for enlisted members
 (a) An enlisted member ... who is entitled to basic pay and is designated as being specially proficient in a military skill ... may--
 (1) be advanced to an enlisted pay grade that is higher than his pay grade at the time of his designation and be entitled to the basic pay and special or incentive pay of that higher grade; or
 (2) in addition to other pay or allowances to which he is entitled under this title, be paid proficiency pay at a monthly rate that is not more than the rate prescribed in the following table for the proficiency rating to which he is assigned....
 ....
 (c) The Secretary concerned shall determine whether enlisted members of a uniformed service ... are to be paid proficiency pay either under subsection (a)(1) or (a)(2) of this section.... He shall also designate, from time to time, those skills ... for which proficiency pay is authorized, and shall prescribe the criteria under which members ... are eligible for a proficiency rating in each skill. He may, when he considers it necessary, increase, decrease, or abolish proficiency pay for any skill. [Emphasis added.]
 The statute was amended in 1984. Department of Defense Authorization Act, 1985, Pub.L. No. 98-525, Sec. 623(b)(1), 98 Stat. 2492, 2541-42 (1984). This amended version is not at issue here.
 
 
 [3]
 The Little Tucker Act is a jurisdictional statute and does not by itself create a substantive right enforceable against the United States for money damages. See United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (discussing the analogous Tucker Act, 28 U.S.C. Sec. 1491). The substantive right of relief must be found in some other source of law such as " 'the Constitution, or any Act of Congress, or any regulation of an executive department.' " United States v. Mitchell, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) (quoting the Tucker Act, 28 U.S.C. Sec. 1491)
 
 
 [4]
 For example, Appellants cite the following colloquy between General Maddux and Representative Kilday:
 General MADDUX.... [L]et us say we have a system, and we say that a jet engine mechanic should get $50 per month extra, well, that attaches to him--like the doctor's pay [which is normally higher]--permanently, there is no way to ever get it away. Now, if the jet engine mechanic--some day we don't have jet engines anymore. I don't know what it might be in the future, but as long as we have him we must pay him. But as we want to have a system to induce this man when some other skill becomes more critical to be willing to retrain. We have instituted retraining systems ... but we need some device to make that area over there more attractive so that he is willing to do this retraining. That is why we want a flexible system so that when this skill becomes no longer critical we can put the money over into a new area and pull the man over there.
 ....
 Mr. KILDAY. I agree it should be as flexible as we can get it, and I am willing to leave it to the Secretary to establish it because today he is a jet engine mechanic and tomorrow he might be a ballistic missile man.
 Method of Computing Basic Pay: Hearings on H.R. 9979 Before Subcomm. No. 2 of the House Comm. on Armed Services, 85th Cong., 2d Sess. 5197 (1958).