**Juan Oliva GONZALES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–163C.**

United States Court of Federal Claims.

Nov. 7, 2000.

Emeterio G. Roa, III, Arlington, VA, for plaintiff.

Elizabeth Candler, U.S. Department of Justice, Washington, DC, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen and Assistant Director James M. Kinsella, for defendant. LTC Terry L. Elling and CPT Arden B. Levy, U.S. Army Legal Services Agency, of counsel.

**OPINION**

FIRESTONE, Judge.

This case comes to the court on defendant's motion to dismiss and plaintiff's cross motion for partial summary judgment.[1]

---

1. Because the parties have presented, and the court has considered, matters outside the pleadings with regard to the interpretation of the statutes at issue in this case, defendant's motion to dismiss shall be treated as one for summary

Plaintiff Juan Oliva Gonzales is a former member of the Philippine military who served under the command of American officers during World War II. Mr. Gonzales contends that, as a guerilla fighter who fought under American command during World War II, he is entitled to back quarters and subsistence allowances now provided to guerilla fighters who fought in the Philippines under section 654 of the National Defense Authorization Act for Fiscal Year 1998, Pub.L. No. 105–85 § 654, 111 Stat. 1629, 1804–05 (1997) ("section 654"). The government's policy, however, has been that members of the Philippine military are not eligible for section 654 benefits based on 38 U.S.C. § 107(a) (1994) ("section 107"), which limits the veteran benefits available to members of the Philippine military.[2] Mr. Gonzales contends that the government's denial of benefits under section 654 by application of section 107 amounts to a taking in violation of the Fifth Amendment, and that he is therefore entitled to compensation. For the reasons that follow, the court concludes that section 654 does not extend benefits to members of the Philippine military who fought under the United States Armed Forces during World War II, and therefore Mr. Gonzales has no "property" that the government could have "taken." Accordingly, the claim must be **DISMISSED.**

## FACTS

The following material facts in this case are not disputed. Before World War II began, President Roosevelt invoked his power under the Philippine Independence Act, Pub.L. 73–127 § 10(a), 48 Stat. 456, 463 (1934), to call members of the military forces of the Commonwealth of the Philippines into the service of United States Armed Forces of the Far East ("USAFFE"). 3 C.F.R. § 1307 (1941). Plaintiff Juan Oliva Gonzales was

among those inducted into the USAFFE. Mr. Gonzales alleges he was captured by the Japanese, subsequently escaped the Bataan death march, and joined the guerilla fighters from May 1942 through January 1946.[3]

According to Mr. Gonzales, these facts put him in the class of intended beneficiaries of veteran benefits under section 654. Enacted in 1997, section 654 provides "PAYMENT OF BACK QUARTERS AND SUBSISTENCE ALLOWANCES TO *WORLD WAR II VETERANS* WHO SERVED AS GUERILLA FIGHTERS IN THE PHILIPPINES." Pub.L. No. 105–85 § 654 (emphasis added). In order to qualify for benefits authorized in section 654, the claimant must have been "*a member of the Armed Forces during World War II* " who can demonstrate the following:

(1) the individual was captured within the territory of the Philippines by Japanese forces;

(2) the individual escaped from captivity; and

(3) the individual served as a guerilla fighter in the Philippines from the period from January 1942 through February 1945.

*Id.* § 654(b)(1)-(3), 111 Stat. at 1804–05 (emphasis added).

Mr. Gonzales alleges that he meets all of the section 654 criteria, but the government has taken the position that his claim for benefits is barred by section 107, which makes members of the Philippine military statutorily ineligible for most benefits available to members of the United States Armed Forces. 38 U.S.C. § 107(a). Section 107 provides in pertinent part as follows: "[s]ervice before July 1, 1946, in the organized military forces of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the

---

judgment. Rules of the Court of Federal Claims (RCFC) 12(b)(4).

**2.** Section 107 was originally enacted as part of the First Supplemental Rescision Act of 1946, Pub.L. No. 79–301 Title II, 60 Stat. 6, 14 (1946), codified as amended 38 U.S.C. § 107(a) (1994).

**3.** The government questions whether Mr. Gonzales could prove that he was a captured by

Japanese and served as a guerilla fighter, as required by subsections (b)(1) through (b)(3) of section 654. Ultimately, however, the government acknowledges that these facts are immaterial because it is undisputed that Mr. Gonzales does not meet the threshold requirement in section 654 of having been "a member of the Armed Forces during World War II."

President dated July 26, 1941 ... *shall not be deemed to have been active military, naval, or air service"* in the United States Armed Forces for the purpose of veteran benefits, except as expressly provided in the Act. 38 U.S.C. § 107(a) (emphasis added). Mr. Gonzales apparently concedes that section 107 is controlling, but contends that it effects a "taking" of his section 654 benefits, and thus entitles him to just compensation under the Fifth Amendment.

On March 24, 1999, Mr. Gonzales filed a complaint in this court, asserting his takings claim. In addition to the complaint, Mr. Gonzales filed a motion to certify a class action, in order to include other similarly-situated members of the Philippine military in this action.[4] On January 3, 2000, the government moved to dismiss plaintiff's case under RCFC 12(b)(4) for failure to state a claim. The government contends that because section 654 must be read together with section 107, Mr. Gonzales does not meet the threshold eligibility requirements under section 654, and therefore he is not entitled to any benefits that could subsequently have been "taken" by the government.[5] Mr. Gonzales does not challenge the government's interpretation of section 654, but nonetheless seeks a ruling that section 107 effects a taking as a matter of law.

Following briefing on the parties' cross motions, by order dated June 5, 2000, the court requested supplemental briefing on two issues relating to the legislative history surrounding section 654. The case is now ready for decision. The court has determined that oral argument is not necessary.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." RCFC 56(c). Because the parties agree that the issue presently before the court is exclusively a matter of statutory interpretation, summary judgment is appropriate in this case. *See Nissho Iwai Am. Corp. v. United States,* 143 F.3d 1470, 1472 (Fed.Cir.1998) ("Determining the proper scope of a classification ... is an issue of statutory interpretation and thus a question of law.") (citation omitted).

### B. Mr. Gonzales has no vested property interest in benefits under section 654 and therefore cannot establish a claim for a taking

■ Mr. Gonzales argues that his property interest in benefits under section 654 has been "taken" by section 107, which operates to limit the benefits available to members of the Philippine military who served with the United States Armed Forces in World War II. In order to establish a taking under the Fifth Amendment, Mr. Gonzales must first establish a compensable property interest. *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1374 (Fed.Cir.2000) (stating that under takings analysis, "[f]irst, a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action"). In this connection, the Supreme Court has held that the Constitution does not create property interests. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Id.* (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980);

---

4. On January 14, 2000, the court granted the government's motion to stay plaintiff's motion for class certification pending resolution of the merits. Given the disposition that follows, it would be a waste of judicial resources to allow a class action in the litigation at bar. *Bickford v. United States,* 228 Ct.Cl. 321, 656 F.2d 636, 642 n. 15 (1981) (citation omitted). Accordingly, plaintiff's motion to certify a class action is hereby denied.

5. The government also argues that Mr. Gonzales has not applied for benefits under section 654, and therefore his claim is barred by the doctrine of exhaustion of administrative remedies. However, the government does not deny that such application would be futile. It is well established that failure to exhaust administrative remedies is not a bar in cases such as this, where to do so would be futile. *Allied–General Nuclear Services v. United States,* 839 F.2d 1572, 1575 (Fed.Cir. 1988).

*Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). With respect to military benefits, case law provides that those benefits are defined by statute. "A soldier's entitlement to pay is dependent upon statutory right." *Wyatt v. United States,* 2 F.3d 398, 400 (Fed.Cir.1993) (quoting *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961)).

 In view of the foregoing, in order for Mr. Gonzales to have a compensable property interest in benefits under section 654, he must establish a "vested right" to payment under the terms of section 654. *See United States v. Larionoff,* 431 U.S. 864, 877, 879, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (holding that service members had a vested right to statutory re-enlistment bonus in effect at the time they agreed to reenlist). If Mr. Gonzales cannot establish a vested interest in payment under section 654, his claim must fail. Absent a vested right, all Mr. Gonzales has established is a "unilateral expectation" of a benefit that Congress has decided to provide to only a limited class of members of the United States military. The case law is clear; a "unilateral expectation" is not a sufficient interest to support a claim for a taking. *Nat'l Educ. Ass'n–R.I. v. Retirement Bd. of R.I. Employees' Retirement Sys.,* 172 F.3d 22, 29 (1st Cir.1999) ("[T]he Supreme Court has also made clear that protection under the Takings Clause does not extend to mere 'unilateral expectation[s],' even if they are entirely plausible expectations of economic benefit.") (citing *Webb's Fabulous Pharmacies,* 449 U.S. at 161, 101 S.Ct. 446) (alteration in original).

Because legal entitlement to military pay is dependent upon statutory right, whether Mr. Gonzales is entitled to benefits under section 654 is a matter of statutory interpretation. *Wyatt,* 2 F.3d at 400. Mr. Gonzales bases his entitlement under section 654 on the grounds that:

1. he became a "member of the Armed Forces during World War II" when he was inducted into and served with the Armed Forces by virtue of President Roosevelt's 1941 order, calling the Philippine military into the service of the USAFFE; and

2. he was captured by the Japanese, participated in the Bataan death march, escaped captivity, and fought with the guerrilla forces against the Japanese, as required by subsections (b)(1) through (b)(3) of section 654.

Mr. Gonzales recognizes the effect of section 107, but maintains that he would be entitled to benefits under section 654 in the absence of section 107.

1. *Mr. Gonzales does not qualify for benefits under the plain language of section 654*

 Statutory construction begins with an analysis of the statute itself. *Id.* By its terms, section 654 provides certain benefits to "WORLD WAR II *VETERANS* WHO SERVED AS GUERILLA FIGHTERS IN THE PHILIPPINES." Pub.L. 105–85 § 654, 111 Stat. at 1804 (emphasis added). The statute further defines the class of guerilla fighters eligible to receive benefits as follows:

(b) COVERED INDIVIDUALS—A payment under subsection (a) shall be made to any individual who *as a member of the Armed Forces during World War II*—[can meet the remaining criteria].

*Id.* § 654(b), 111 Stat. at 1804 (emphasis added). Mr. Gonzales' right to payment under section 654 therefore turns on whether he was "a member of the Armed Forces during World War II."

 Section 654 does not define "member of the Armed Forces during World War II." The title of the section, however, makes plain that it applies to only "veterans." Section 654 states that it provides "PAYMENT OF BACK QUARTERS AND SUBSISTENCE ALLOWANCES TO WORLD WAR II *VETERANS* WHO SERVED AS GUERRILLA FIGHTERS IN THE PHILIPPINES." *Id.* (emphasis added). Under well-established principles of statutory construction, the title of a statute may be considered "when [it] shed[s] light on some ambiguous word or phrase in the statute itself." *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 2168, 147 L.Ed.2d 203 (2000) (citing *Pa. Dept. of Corrections v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)) (altera-

tion in original, internal quotations omitted). Congress gave the term "veteran" a specific definition in 38 U.S.C. § 101(2). Section 101(2) defines "veteran" as one who "served in the active military, naval, or air service." 38 U.S.C. § 101(2). To determine whether Mr. Gonzales "served in the active military, naval, or air service," the court must turn to section 107, which defines "Certain service *deemed not to be active service*," and excludes from "active service" persons, like Mr. Gonzales, who fought as members of the Philippine military under American command in World War II. *Id.* § 107(a).[6]

■ Section 107, which was enacted in 1946 and later codified in the same act as section 101(2),[7] expressly limits the rights of members of the Philippine military to certain identified benefits not at issue here. *Id.* Aware that President Roosevelt had called the Philippine military into service on behalf of the USAFFE during World War II, Congress enacted section 107 in order to clarify that members of the Philippine military were not members of the United States Armed Forces during World War II for the purpose of veteran benefits, except in very limited circumstances specified in the act.

The legislative history regarding section 107 makes clear that Congress intended to clarify that members of the Philippine military are not "veterans" for the purpose of veteran benefit statutes, despite President Roosevelt's 1941 order. According to the Chairman of the Senate Subcommittee on Appropriations regarding section 107:

Upon the principle that the Philippine Army was serving with our Army but was not part of the armed forces of the United States, the War Department took prompt action to disapprove the proposal to extend the American pay rates to soldiers serving in the Philippine Army.... Members of the Philippine Army did not actually re-

ceive the pay of an American soldier, which has a direct bearing upon the question as to whether that army is a part of the armed forces of the United States.

It was therefore decided that the legal situation must be promptly clarified and that the best way to accomplish it was by way of an amendment to the surplus recission bill, [Pub.L. No. 79-301] ....

*Filipino Am. Veterans & Dependents Ass'n v. United States,* 391 F.Supp. 1314, 1318-19 n. 4 (N.D.Cal.1974) (quoting legislative history of 38 U.S.C. § 107).

By virtue of the sweeping language contained in section 107, making it applicable to "any law ... conferring rights, privileges, or benefits ... by reason of the service of such person ... in the Armed Forces," Mr. Gonzales is statutorily ineligible for the veteran benefits provided in section 654. 38 U.S.C. § 107(a). In other words, section 107, which pre-dates section 654, precludes Mr. Gonzales from claiming a vested right to section 654 benefits.

Therefore, this case must be distinguished from cases in which a service member was, by statute, given a vested right to payment that was then revoked. *See Wyatt,* 2 F.3d at 401 (holding that *Larionoff,* 431 U.S. at 879, 97 S.Ct. 2150, was not controlling because the statute at issue gave "no indication that Congress intended that entitlement to proficiency pay would become vested at the time of reenlistment"). Section 107, which was enacted prior to section 654, makes plain Congress' intent that the benefits available to members of the Philippine military are limited to those identified in section 107, unless there is an express provision allowing for members of the Philippine military to collect benefits. Given the language of section 654 and section 107, the government is correct in its assertion that Mr. Gonzales has no prop-

---

6. Other courts have looked to the definition of "veteran" in section 101(2) when construing section 107 and have concluded that the effect of section 107 is to deny benefits. *See Besinga v. United States,* 14 F.3d 1356, 1359 & n. 11 (9th Cir.1994) (holding that "[e]ligibility for benefits generally depends on 'veteran' status," and that sections 107 and 101(2) operate to deny benefits to members of the Philippine Army).

7. In 1958, sections 101(2) and 107 were codified in Title 38 of the United States Code under Pub.L. No. 85-857 § 101(2), § 107(a), 72 Stat. 1105, 1106, 1111-12 (1958), in order to "consolidate into one Act all of the laws administered by the Veterans' Administration."

erty interest that could be "taken" by operation of section 107.

2. *Contemporaneous legislative history confirms Congress' intent to exclude members of the Philippine military from section 654 benefits*

A review of the contemporaneous legislative history surrounding section 654 and proposed amendments to section 107 confirm that Mr. Gonzales was never an intended beneficiary under the section 654. Although there is no official report language, section 654 and its predecessor, section 634 of the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106 § 634, 110 Stat. 186, 366 (1996), apparently were enacted to cover a specific class of American servicemen who had been captured by the Japanese during WWII and then escaped to become guerilla fighters in the Philippines, but were denied quarters and subsistence allowances when they were repatriated with American forces because they had been officially classified as "missing in action." Letter from Bruce M. Carnes, Defense Finance and Accounting Service, Department of Defense, Arlington, VA, to Senator Strom Thurmond, Washington, DC (Jul. 9, 1998) (Ex. A Def.'s Suppl. Br.). Congressman Livingston introduced section 654 to correct the "classification" problem faced by these American service members, and to get them their allowances. *Id.* That Congress did not intend to extend section 654 benefits to Philippine service members is demonstrated by the legislative history surrounding proposed amendments to section 107, which show that Congress understood that section 107 governs the rights of Filipino veterans.

In 1997, the same year Congress enacted the current section 654, Congress also considered, but ultimately rejected, a bill that would have amended section 107 to include members of the Philippine military as veterans whose service "shall be deemed to have been active military, naval, or air service." *See* Filipino Veterans Equity Act, H.R. 836 105th Cong. (1997); S. 623 105th Cong. (1997). In July of 1997, Congress held hearings, during which the Committee heard testimony from members of Congress, representatives from the Veterans Benefits Administration, and various interest groups on the effect of section 107 and the proposed bill to amend it—S.623. *Hearing on Pending Legis. on Veterans Benefits and Health Care Issues Before the Senate Comm. on Veterans' Affairs,* 105th Cong., S. Hrg. 105–348 (1997). The purpose of the proposed amendment to section 107 was to lift the limit on Filipino veterans benefits. *Id.*

It is well settled that Congress is presumed to act knowingly. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1581 (Fed.Cir.1990) (holding that it can be presumed that Congress is knowledgeable about existing law pertinent to legislation it enacts) (citing *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 184–85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988)). Accordingly, the court must assume that Congress' decision not to extend section 654 or other veteran benefits to Filipino service members who fought in World War II was intentional. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (holding that Congress will be assumed to have intended what it enacted).[8] Contrary to Mr. Gonzales' belief, the language and legislative background to section 654 make clear that Congress did not intend to provide Mr. Gonzales and other members of the Philippine military a vested interest in the payments provided for under section 654. In such circumstances, Mr. Gonzales must seek relief from Congress and not the courts.[9]

8. Notably, where Congress has decided to include members of the Philippine military among a class of beneficiaries, it has done so expressly. Indeed, section 107 provides certain limited benefits to members of the Philippine military. In addition, in recently enacting 42 U.S.C. § 1012, Pub.L. No. 106–169 § 812, 113 Stat. 1822, 1853 (1999), to provide limited Social Security benefits to World War II veterans, Congress specifically included members of the Philippine military among those eligible to receive benefits.

9. It is worth noting that the Constitution permits Congress to draw lines when creating a class of beneficiaries under a legislative entitlement program, so long as those lines are consistent with the Fifth Amendment's due process and equal protection mandates. *Fritz,* 449 U.S. at 176, 101 S.Ct. 453 (upholding legislation phasing out

## CONCLUSION

Because Mr. Gonzales has no vested right to benefits under section 654, Mr. Gonzales cannot establish a compensable property interest in such benefits, and his taking claim must fail. Accordingly, Mr. Gonzales' complaint is **DISMISSED.** The Clerk is directed to enter judgment in favor of defendant United States. Each party shall bear its own costs.

classes of employees under benefits statute). Thus, while this court does not have jurisdiction over due process or equal protection claims, it is aware that the Federal Circuit and other courts have upheld the constitutionality of section 107.

*Talon v. Brown,* 999 F.2d 514 (Fed.Cir.1993); *Quiban v. Veterans Admin.,* 928 F.2d 1154 (D.C.Cir.1991); *Filipino Am. Veterans,* 391 F.Supp. at 1318.